UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMIR M. HAMZA,

                Plaintiff,

    -against-                             1:19-CV-0447 (LEK/DJS)

EILEEN YANDIK, *et al.*,

                Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.   INTRODUCTION

Plaintiff Amir Hamza brings this pro se action against Eileen Yandik, William Yandik, Stephen Yandik, and Green Acres Farm (collectively, "Defendants"). Plaintiff originally filed a complaint in this action on April 15, 2019. Dkt. No. 1 ("Complaint"). On May 14, 2019, the Court granted Plaintiff's application to proceed in forma pauperis ("IFP"). Dkt. No. 5. Also on May 14, 2019, by separate order, the Honorable Daniel J. Stewart, United State Magistrate Judge, reviewed the Complaint under 28 U.S.C. § 1915(e)(2)(B) and recommended that all claims be dismissed for failure to state a claim upon which relief may be granted, but with leave to amend. Dkt. No. 6 ("First Report-Recommendation"). Plaintiff filed no objections to the First Report-Recommendation, but rather filed an Amended Complaint. Dkt. No. 9 ("Amended Complaint"). On June 27, 2019, the Magistrate Judge reviewed the Amended Complaint under § 1915(e)(2)(B) and again recommended the dismissal of all claims for failure to state a claim upon which relief may be granted, while granting leave to amend. Dkt. No. 11 ("Second Report-Recommendation"). On July 12, 2019, Plaintiff submitted objections to the Second Report-Recommendation. Dkt. No. 13 ("Objections").

For the reasons that follow, the Court adopts the Second Report-Recommendation in part and modifies it in part.

## II.    BACKGROUND

### A.  Plaintiff's Factual Allegations

The Complaint, Amended Complaint, and Objections paint a complex story, the potentially relevant parts of which the Court will detail here.[1,2] Between June 2013 and October

---

[1]  As the Magistrate Judge noted, the Amended Complaint is "significantly more streamlined thant the original pleading which totaled over 138 pages. It omits many of the very intimate details of Plaintiff's life and personal relationships that were included in the original Complaint." Second R. & R. at 5. Unfortunately, in addition to omitting irrelevant details included in the original Complaint, the Amended Complaint omits some relevant ones as well. The Magistrate Judge advised Plaintiff that any amended complaint must be a complete pleading, including all factual allegations and legal claims he intended to pursue, as it would supersede and replace the original pleading in its entirety. First R. & R. at 5. Nevertheless, in light of Plaintiff's pro se status, and for purposes of completeness, the Court here recites certain facts from the original Complaint. See, e.g., Portillo v. City of New York, No. 17-CV-5448, 2018 U.S. Dist. LEXIS 99364, at *3 n.3 (S.D.N.Y. Jun. 12, 2018) ("[W]here a plaintiff is proceeding pro se and appears to have intended to 'supplement' his initial complaint with an amended complaint, the Court may consider relevant factual allegations contained in, and exhibits attached to, the prior complaint for purposes of deciding a motion to dismiss."); Pereyra v. Eaddy, No. 13-CV-4760, 2015 U.S. Dist. LEXIS 85209, at *3 (S.D.N.Y. May 13, 2015) ("Although plaintiff does not repeat his allegation from the prior complaint that the second defendant officer failed to intervene, we read his pro se complaint, insofar as it includes Officer Eaddy as a defendant, as intended to replicate his allegations from the prior complaint.").

[2]  The Court notes that new factual allegations generally cannot be asserted for the first time in objections to a report-recommendation. See, e.g., Syfert v. City of Rome, No. 17-CV-578, 2017 WL 5195230, at *3 (N.D.N.Y. Nov. 9, 2017) (noting that even factual allegations that correct pleading defects identified in a report-recommendation are properly included in an amended pleading rather than in objections). Nevertheless, for purposes of efficiency, the Court will recite them here. As discussed below, even if these factual allegations had been included, properly, in the Amended Complaint, the § 1983 claims to which they pertain would be dismissed for failure to state a claim.

2016, Plaintiff worked at Green Acres Farm (the "Farm"), which is located in New York State.[3]
Compl. at 1–2. The Farm is owned and operated by Eileen Yandik. Id. William Yandik, Eileen
Yandik's son, was Plaintiff's supervisor at the Farm. Id. at 2. Stephen Yandik[4] oversaw payroll at
the Farm during the relevant time period. Am. Compl. at 5. Defendants currently reside in
Livingston, New York. Id. at 1.

In June 2013, around the time that Plaintiff commenced employment at the Farm, he and
William Yandik initiated a romantic relationship. Compl. at 2. On July 15, 2014, Plaintiff and
William Yandik signed a legal agreement by which they arranged to have a child via a surrogate.
Id. at 3. This child was born on April 8, 2016. Id. On May 11, 2015, Plaintiff and William
Yandik married. Id. The couple ultimately divorced, roughly two years after Plaintiff's
employment at the Farm was terminated. Id. at 33.

Plaintiff's job responsibilities at the farm included planting trees, clearing fields,
cleaning, operating a cash register, managing the Farm store, preparing bakery items, and an
assortment of other tasks. See id. at 15, 20.  For the duration of his employment on the Farm,
Plaintiff was not compensated for his labor. See Am. Compl. at 2. Plaintiff does not provide an
approximation of the number of hours he worked throughout his term of employment. But at
various times, it appears that Plaintiff worked full days and weekends, while during other
periods, such as after the birth of his child, Plaintiff worked sporadically and with limited hours.
See Compl. at 12, 14.

Eileen Yandik verbally represented to Plaintiff, on a date not specified, that in exchange

---

[3]  The Complaint does not provide a more specific address for the Farm.

[4]  Plaintiff does not specify Stephen Yandik's relationship to the other defendants.

for his labor, Plaintiff would be made "partial owner" of the Farm. See Am. Compl. at 2. William Yandik reiterated this promise, also at unspecified date, characterizing Plaintiff's unpaid labor as "sweat equity" that would be compensated with eventual "partial ownership" of the Farm. Compl. at 19, 21. Elsewhere in the Complaint, Plaintiff alleges that William Yandik promised "partial ownership" of the Farm in exchange for "employment, marriage to [William], and a planned surrogacy of a child." Id. at 2. Despite these promises, Plaintiff was never made a partial owner of the Farm. See Am. Compl. at 2.

On two occasions, Plaintiff sustained injuries while working on the Farm. On an unspecified date, while dismantling an two-story addition to a farmhouse, Plaintiff sustained a "minor injury" that required a surgical stapling procedure. See Compl. at 20. On another unspecified date, Plaintiff received a concussion when he fell from a delivery truck while unloading apples. See id. Defendants did not carry workers' compensation insurance for employees of the Farm at the time of either event. See id.

Defendant William Yandik and Eilieen Yandik "engaged in coercing the Plaintiff to hide his sexual orientation." Am. Compl. at 2, 6. They persisted in compelling Plaintiff to conceal his sexual orientation from customers from the start of his employment until October 2016, when William Yandik publicly revealed his own sexual orientation in the course of a campaign for political office. Compl. at 14. Plaintiff also alleges that Stephen Yandik made unspecified discriminatory comments about Plaintiff to unspecified parties, regarding Plaintiff's religion, race, and sexual orientation. See Am. Compl. at 6. Plaintiff is a former Muslim who converted to Judaism while employed at the Farm. See Compl. at 27–29.

Contemporaneously with his period of employment, Plaintiff alleges that Eileen and

4

William Yandik used their positions in local government to induce other government officials to follow and photograph Plaintiff's car in public places. Plaintiff alleges that Eileen Yandik "used her position as the Town of Livingston Court Clerk . . . to take excessive and continuous action against the Plaintiff," Am. Compl. at 3, and that William Yandik "used his position as the Town of Livingston Deputy Supervisor" to do the same, id. at 3. Plaintiff alleges that Eileen Yandik "convinced local law enforcement to have the Plaintiff followed by law enforcement based on unfounded accusation [sic]." Id. at 4.

In his Objections, Plaintiff elaborates on these allegations. He alleges that Town of Livingston Justice Harold Weaver, "at the behest of . . . Eileen Yandik," issued an order instructing "all law enforcement and public employees" in the Town of Livingston—along with the Columbia County Sheriff's Department, the Greenport Police Department, the Philmont Village Police Department, the New York State Police, "Town of Greenport Parks and Recreation," and other "government agencies in Columbia County"—to "follow and monitor" Plaintiff's car. See Objs. at 4–5. Plaintiff alleges that, on several occasions, the Greenport Police "moniter[ed]" and "photograph[ed]" Plaintiff and his son in the Greenport Town Park. Id. at 5. Plaintiff also alleges that "Town of Greenport Parks and Recreation" "monitored" his car on multiple occasions and that, on one occasion, "a Columbia County Sheriff slowed his vehicle and photographed Plaintiff from his phone." See id. at 5, 6.

Finally, Plaintiff avers that Eileen and William Yandik have tarnished his reputation by making unspecified statements about Plaintiff to various public officials. Eileen Yandik "slandered the Plaintiff" in front of Town of Livingston Judge Angela Guzzi and her family, Am. Compl. at 4, and William Yandik "slandered the reputation of the Plaintiff in front of judges, law

5

enforcement, and public officials," id. at 6.

**B. The Second Report-Recommendation**

Based on the factual allegations described, Judge Stewart construed the Amended

Complaint to assert (1) claims under the Racketeer Influenced and Corrupt Organizations Act

("RICO"); (2) § 1983 claims premised on unspecified constitutional violations; and (3) claims

for discrimination on the basis of race, religion, and sexual orientation. See id. at 5–6.

Additionally, while the Second Report-Recommendation did not explicitly construe other causes

of action, Judge Stewart noted in passing that Plaintiff alleges Defendants violated a variety of

other laws, "including but not limited to" New York laws pertaining to workers' compensation

coverage and firearms. See id. at 5.

The Amended Complaint contends that the Court has jurisdiction over Plaintiff's claims

on the basis of diversity, under 28 U.S.C. § 1332. Am. Compl. at 1. But the Magistrate Judge

concluded that because Plaintiff and Defendants are all residents of New York, the Court lacks

jurisdiction on the basis of diversity. See R. & R. at 4–5.

The Magistrate Judge noted that the Court may have federal question jurisdiction under

28 U.S.C. § 1331 but determined that even if the Court had federal question jurisdiction, Plaintiff

would fail to state any federal claim. Second R & R at 5–7.

**C. Objections**

In his Objections, Plaintiff offers several new factual allegations, legal arguments, and

legal claims. In regard to diversity jurisdiction, Plaintiff newly avers that he was a resident of

Delaware at the time of some of the events giving rise to this suit. Plaintiff identifies specific

Constitutional rights that Eileen Yandik allegedly violated, for purposes of his § 1983 claims (or,

6

in other words, asserts new § 1983 claims). Id. at 4. Plaintiff elaborates on factual allegations

relevant to his § 1983 claims against Eileen Yandik, specifying the means by which she induced

local and state officials to surveil Plaintiff and the manner in which these officials did so. Objs. at

4–6. Plaintiff offers some of those same facts to support RICO claims alleged in the Amended

Complaint. Id. at 4. Additionally, Plaintiff offers new arguments to support existing RICO

claims. Id. at 3–4. He also alleges entirely new RICO claims. Id. at 2, 3.

## III.  STANDARD OF REVIEW

### A.  § 1915 Review

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time" if the

action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action IFP,

it is the court's responsibility to determine whether the plaintiff may properly maintain the

complaint before permitting the plaintiff to proceed IFP. See id.

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Although the

Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal quotation marks and alterations omitted).

Pro se pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). The Court should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).

**B.  Review of a Report-Recommendation**

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-

CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d

301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ.

of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014)). "Even a *pro se* party's objections to a Report

and Recommendation must be specific and clearly aimed at particular findings in the magistrate's

proposal." Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y.

Aug. 25, 2011). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." § 636(b).

## IV.   DISCUSSION

### A.  Overview

The Court agrees with Judge Stewart's conclusion that Plaintiff has failed to establish

federal jurisdiction on the basis of diversity. See Second R. & R. 4–5. The Court finds, however,

that Plaintiff has established federal question jurisdiction with respect to several claims

discernible in his pleadings. The Court declines to exercise supplemental jurisdiction over any

state law claims.

The Court also agrees with the Second Report-Recommendation's findings that Plaintiff

has failed to plausibly state any federal claims, and that his Amended Complaint should be

dismissed without prejudice and with leave to amend. The Court, however, rejects the Magistrate

Judge's suggestion that Plaintiff is necessarily limited to one more opportunity to amend. Second

R. & R. at 2. The Court will determine whether an additional opportunity to amend is foreclosed

after reviewing a second amended complaint, should Plaintiff choose to file one.

Judge Stewart noted that, in addition to RICO, § 1983, and employment discrimination

claims, the Plaintiff appears to assert a variety of other causes of action, "including but not

limited to" claims premised on Defendants' failure to carry workers' compensation coverage, violation of campaign finance laws, failure to keep certain business records, violation of state firearms laws, and the use of coercion and threats against employees. Second R. & R. at 5. The Court notes that among these other claims, Plaintiff appears to assert a federal cause of action under the Fair Labor Standards Act ("FLSA") against the Farm for failure to pay minimum and/or overtime wages.

The Court construes the Amended Complaint to raise the following claims: (1) RICO claims against all defendants; (2) § 1983 claims against Eileen Yandik and William Yandik; (3) Title VII claims for discrimination on the basis of race, religion, and sex, against the Farm[5]; and (4)  FLSA claims for failure to pay minimum and/or overtime wages, against the Farm.

Plaintiff raises several new legal claims, factual allegations, and legal arguments in his Objections. Legal claims can not be raised for the first time in objections. See Clark v. United States, 367 F. Supp. 3d 72, 75 (S.D.N.Y. 2019) ("Because 'new claims may not be raised properly at this late juncture,' such claims 'presented in the form of, or along with, 'objections,' should be dismissed.'") (quoting Pierce v. Mance, No. 08-CV-4736, 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009)). Similarly, new factual allegations, even if relevant to existing claims, are properly included in a subsequent amended pleading rather than in objections. See Syfert, 2017 WL 5195230, at *3. Moreover, ordinarily, objections are not the proper vehicle for new legal arguments. See Ross v. Koenigsmann, No. 14-CV-1321, 2016 WL 5408163, at *2

---

[5]  Plaintiff appears to assert some of his employment discrimination claims against Stephen Yandik as an individual. See Am. Compl. at 6. But Title VII claims can only be asserted against the employer as an entity, and not against individual supervisors who are agents of the employer. See Guerra v. Jones, 421 Fed. Appx. 15, 17 (2d Cir. 2011). The Court liberally construes Plaintiff's discrimination claims as claims against the Farm.

(N.D.N.Y. Sept. 28, 2016) ("[A] district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance.") (citing Zhao v. State Univ. of N.Y., 04-CV-210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011). Plaintiff is directed to transfer any new claims, allegations, and arguments in his Objections to a second amended complaint, should he choose to file one.

Below, the Court discusses subject matter jurisdiction and then addresses each of Plaintiffs' federal claims. The Court notes in the course of its analysis which allegations, claims, and arguments have been newly asserted via Plaintiff's Objections. Since Plaintiff does not raise any valid objections, but rather raises new, claims, factual allegations, and legal arguments, the Court subjects the Magistrate Judge's findings to clear error review. The Court finds clear error only with respect to the Magistrate Judge's reasoning behind dismissal of Plaintiff's employment discrimination claims and otherwise adopts the Magistrate Judge's recommendation that the Court dismiss all federal claims for failure to state a claim. The Court notes, further, that even if the various new claims, allegations, and arguments in the Objections had been properly asserted, Plaintiff would still fail to state any federal claim.

### B. Subject Matter Jurisdiction

The Second Report Recommendation noted that all parties to this case appear to be residents of New York, which precludes jurisdiction under 28 U.S.C. § 1332. See Second R. & R. at 4–5; Am. Compl. at 1; see also Herrick Co., Inc. V. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001) ("[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships.").

In his Objections, Plaintiff objects to this finding, newly averring that he was a resident of

11

Delaware at the time of some of the events giving rise to this suit. See Objs. at 6. Even if this factual allegation were properly raised for the first time in Plaintiff's Objections, it would not be relevant. Citizenship for purposes of diversity jurisdiction is determined "as of the moment the complaint was filed," E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 163 (2d Cir. 2001), and not as of the time of the events and actions to which claims pertain. The Court adopts Judge Stewart's findings with regard to diversity jurisdiction.

The Court notes, howoever, that Plaintiff pled several federal claims in his Amended Complaint and has thus properly invoked the Court's subject matter jurisdiction under 28 U.S.C. § 1331. The Court assesses the merits of these federal claims below.

In general, once federal question jurisdiction is established with respect to some federal claim, district courts may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over state law claims "so related" to that federal claim that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Because the Court finds that Plaintiff has failed to state a claim with respect to any federal claim, however, the Court does not address any state claims discernable in Plaintiff's Amended Complaint at this time.[6] See 28 U.S.C. 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if — . . . the district court has dismissed all claims over which it has original jurisdiction."); see also Castellano v. Board of Trustees of Police Officers' Variable Supplements

---

[6] The Court notes that Plaintiff's Amended Complaint may contain state law claims for sexual orientation discrimination in violation of the New York State Human Rights Law, minimum wage and/or overtime wage violations under the New York Labor Law, breach of contract, negligent tort claims in connection with workplace injuries, and defamation. But because the Court declines to exercise supplemental jurisdiction over any state law claims, the Court at this time need not construe the Amended Complaint as asserting such claims.

Fund, 937 F.2d 752, 758 (2d Cir. 1991) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Plaintiff has the opportunity to raise state law claims in a second amended complaint that properly pleads federal question jurisdiction, should he choose to do so.

### C. Racketeer Influenced and Corrupt Organizations Act

The Amended Complaint asserts RICO claims based on a variety of predicate acts. As the Magistrate Judge noted, with respect to several of these alleged predicate criminal violations, the Amended Complaint fails to allege that they were the proximate cause of harm to Plaintiff. Second R. & R. at 6; Stancuna v. New Haven Legal Assistance Inc., 383 F. App'x 23, 24 (2d Cir. 2010) (holding that a plaintiff asserting a RICO violation must plead: (1) the defendant's violation of [18 U.S.C.] § 1962; (2) an injury to plaintiff's business or property; and (3) the defendant's violation caused the plaintiff's injury."). For instance, it is difficult to see how deceptively marketing food products to customers, purportedly in violation of 18 U.S.C. § 1343, possibly *could have* harmed Plaintiff, who was an employee and not a customer of the Farm. In any case, Plaintiff certainly has not pleaded facts indicating as much. The Court finds no clear error in the Magistrate Judge's finding that Plaintiff fails to state a RICO claim predicated on Defendants' violation of § 1343. Consequently, this claim is dismissed without prejudice.

The Court additionally notes that Plaintiff misconstrues several federal statutes whose violation he offers as predicate acts for RICO claims alleged in his Amended Complaint. Section 1510 pertains to obstruction of federal criminal investigations. See LoPorto v. Cty. of Rensselaer, No. 15-CV-866, 2018 WL 4565768, at *16 (N.D.N.Y. Sept. 24, 2018) (Kahn, J.). This is not

supported by any of Plaintiff's factual allegations, which detail Defendants' interference with state and local law governmental processes.[7] Section 1511 prohibits the obstruction of state and local law enforcement in connection with illegal gambling. See § 1511(a) ("It shall be unlawful for two or more persons to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, *with the intent to facilitate an illegal gambling business*.") (emphasis added). Section 1511 is inapplicable here, because Plaintiff has not alleged that any form of illegal gambling has occurred. Plaintiff's RICO predicates regarding witness tampering under §§ 1512 and 1513 are also inapposite, for the simple reason that Plaintiff has not alleged that he or any other person mentioned in the pleadings is a potential witness in any proceeding. The Court finds no clear error in the Magistrate Judge's finding that Plaintiff fails to state RICO claims based on violations of 18 U.S.C. §§ 1510, 1511, 1512, and 1513.

In his Objections, Plaintiff offers a new legal argument in support of his RICO claim based on 18 U.S.C. § 1341, a cause of action asserted in his Amended Complaint.[8] Specifically, Plaintiff argues that by underreporting his income for tax purposes, William Yandik obtained some form of economic advantage in divorce proceedings, to Plaintiff's economic detriment. Objs. at 3–4. The Court declines to consider this new legal argument at this time. See Weller v.

_____

[7] Similarly, in Plaintiff's  Objections, Plaintiff misconstrues § 1503 to prohibit obstruction of state and local governmental processes. Objs. at 4. Plaintiff's Objections offer new factual allegations intended to support a RICO claim based on Defendants' § 1503, a claim asserted in the Amended Complaint. See id. at 4–6; Am. Compl. at 12. Contrary to Plaintiff's understanding, § 1503 pertains only to obstruction of federal judicial proceedings and thus could not apply to Defendants' alleged conduct. See O'Malley v. New York City Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990).

[8] Based on the same facts and arguments, Plaintiff alleges new RICO claims in his Objections predicated on violations of 26 U.S.C. §§6651 and 6655. Objs. at 3–4.

Dykeman, No. 10-CV-181, 2012 WL 872398, at *7 (D. Vt. Mar. 14, 2012) (declining to consider

an argument raised for the first time in objections to a report-recommendation, in part because

"at this nascent stage of the proceedings, neither efficiency nor fairness require consideration of

Defendant's new argument"). Plaintiff has the opportunity to detail this argument for his RICO

claim premised on Defendants' violation of § 1341 in a second amended complaint.

   In his Objections, Plaintiff newly asserts a RICO claim predicated on Defendants'

violation of 18 U.S.C. § 1589. The Court makes some brief observations regarding this claim,

despite the fact that it has been improperly asserted for the first time in Plaintiff's Objections. See

Clark, 367 F. Supp. 3d at 75. Section 1589 prohibits forced labor. See § 1589(a). In his Amended

Complaint, Plaintiff alleges that Defendants employed "coercion" and "threats" to compel him to

work without compensation, albeit without specifying the nature or context of the purported

coercion and threats. See, e.g., Am. Compl. at 3 ("Defendant Eileen Yandik uses coercion,

threats and intimidation of employees, including the Plaintiff, to ensure they were compliant with

her needs."). At the same time, Plaintiff seems to suggest that Defendants' failure to compensate

him in itself constituted "slave labor" in violation of § 1589. See Objs. at 2. As discussed below,

federal law provides remedies for uncompensated labor, under the FLSA, even in the absence of

force or the threat of force by the employer. But without more specific allegations demonstrating

that he worked involuntarily, Plaintiff cannot state a claim under § 1589. See, e.g., Spiteri v.

Russo, No. 12-CV-2780, 2013 WL 4806960, at *47 (E.D.N.Y. Sept. 7, 2013), aff'd sub nom.,

622 F. App'x 9 (2d Cir. 2015) (in a case involving unpaid labor, Plaintiff's RICO claim

predicated on § 1589 failed, because the plaintiff had "failed to plausibly allege that he was

forced to continue to work . . . given Plaintiff's . . . assertions that (1) he traveled freely while

working for the...Defendants, (2) he continued to work for other [employers]...while working for

the Attorney Defendants, (3) he worked with a great deal of autonomy, and (4) he freely

discontinued working for the . . . Defendants to relocate to California[.]").

     For the foregoing reasons, Plaintiff's RICO claims are dismissed without prejudice. As

noted, there are certain claims, facts, and arguments that Plaintiff has improperly asserted for the

first time in his objections. Plaintiff has the opportunity to include those claims, facts, and

arguments in a second amended complaint, should he choose to do so.

### D.  Section 1983

     To state a claim pursuant to Section 1983, a complaint must allege "(1) 'that some person

has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the

plaintiff] of that right acted under color of state . . . law.'" Velez v. Levy, 401 F.3d 75, 84 (2d

Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)); accord Byng v. Delta Recovery

Servs. LLC, 568 F. App'x 65, 65–66 (2d Cir. 2014).

     The Magistrate Judge noted that Plaintiff's Amended Complaint appears to assert § 1983

causes of action, based on Eileen Yandik's and William Yandik's separate and independent

alleged abuses of official positions in local government to harm Plaintiff. Second R. & R. at 7;

Am. Compl. at 3, 4. However, as the Second Report-Recommendation noted, Plaintiff's failure

to allege a violation of a specific federal right is fatal to any potential § 1983 claim. Id. The Court

finds no clear error in the Magistrate Judge's determination that Plaintiff's § 1983 claims against

both William and Eileen Yandik should be dismissed on this basis.

     In his Objections, Plaintiff attempts to remedy this defect, albeit only with respect to his

claims against Eileen Yandik. He newly alleges specific Constitutional violations that Eileen

Yandik committed—namely, violations of Plaintiff's Fourth Amendment Right against

unreasonable search and seizure and his Fifth Amendment Right to due process. Objs. at 4.

Presumably, Plaintiff means to assert Fourteenth Amendment claims, as the Fourteenth

Amendment  imposes the Fourth Amendment's prohibition on unreasonable searches and

seizures against the states by incorporation, see Mapp v. Ohio, 367 U.S. 643, 655 (1961), and

directly imposes due process requirements upon state governments, see, e.g., Komondy v. Gioco,

No. 12-CV-250, 2014 WL 12918203, at *4 n.6 (D. Conn. Jan. 29, 2014). Accompanying these

new claims, Plaintiff includes new supporting factual allegations. Id. at 4–6. Even if these new

facts and claims could properly be asserted in Plaintiff's Objections, Plaintiff would fail to state

his § 1983 claims.

   "[A] Fourth Amendment search occurs when the government violates a subjective

expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S.

27, 33 (2001). A Fourth Amendment search can also occur, under certain circumstances, when

the government trespasses upon private property. See United States v. Jones, 565 U.S. 400,

406–07 (2012).

   In support of his Fourth Amendment claim, Plaintiff alleges that, at the urging of Eileen

Yandik, various state and local officials followed and photographed Plaintiff's car on public

roads and followed and photographed Plaintiff and his son in a public park. See Am. Compl. at

3–4; Objs. at 4–6. But for purposes of the Fourth Amendment, there is no reasonable expectation

of privacy in the movements of one's vehicle on public roads, and a trespassory search does not

occur absent a physical intrusion upon one's vehicle. See id. at 408–10. More generally, there is

no reasonable expectation of privacy in public places. See United States v. Davis, 326 F.3d 361,

365 (2d Cir. 2003) ("[W]hat a person knowingly exposes to the public . . . does not receive

Fourth Amendment protection."); Rodriguez v. United States, 878 F. Supp. 20, 24 (S.D.N.Y.

1995) (holding that there is no reasonable expectation of privacy with respect to video

surveillance when a defendant is taped while on a public street). Because Plaintiff has alleged

nothing more than observation by government agents in public places, and because he does not

allege that any government agent physically intruded upon his vehicle, he would not, based on

these facts, adequately plead a § 1983 claim against Eileen Yandik predicated on a Fourth

Amendment violation.

     To state a violation of procedural due process under the Fourteenth Amendment, Plaintiff

must plead facts establishing the following elements: (1) the existence of a property or liberty

interest of which he was deprived; and (2) the deprivation of that interest without due process.

Bryant v. New York State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012). In his Objections,

Plaintiff merely asserts in conclusory fashion that Eileen Yandik has violated his right to due

process, without identifying any deprivation or any process. Accordingly, even if it were

appropriately asserted for the first time in Objections, Plaintiff would fail to state a Fourteenth

Amendment procedural due process claim.

    **E.  Discrimination on the basis of race, religion, and sex**

    Plaintiff asserts claims for discrimination in employment on the basis of race, religion,

and sexual orientation under Title VII of the Civil Rights Act of 1964.[9] His sexual orientation

---

[9] These could also be construed as employment discrimination claims under the New York State Human Rights Law. See New York Executive Law § 296(1)(a). Because the Court lacks supplemental jurisdiction over these state law claims, however, the Court need not at this time construe Plaintiff's Amended Complaint as asserting them.

discrimination claim is cognizable under Title VII as a form of sex discrimination. See Zarda v. Altitude Express, Inc., 883 F.3d 100, 112 (2d Cir. 2018), cert. granted sub nom., 139 S. Ct. 1599 (2019).

The Magistrate Judge dismissed these discrimination claims on the basis that they "do not relate to Plaintiff in any way." Second R. & R. at 5. The Court disagrees. Concededly, Plaintiff appears to assert claims based on discrimination against other employees. See, e.g., Am. Compl. at 5 ("Defendant Stephen Yandik harassed employees and made sexually explicit comments at female employees and spoke inappropriately to other employees."). Title VII only permits suits by a plaintiff who has been "aggrieved . . . by [an] alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(1). Accordingly, Plaintiff cannot assert a discrimination claim on behalf of other employees, as he lacks standing to do so: they and not he would be the ones "aggrieved." See Jimenez v. Chase Bank, 18-CV-3297, 2019 U.S. Dist. LEXIS 14278, at *6 (S.D.N.Y. Jan. 28, 2019) ("Because the purpose of Title VII is to protect employees from the employers' unlawful actions, to establish that he is an aggrieved person, Jimenez must allege that *he* has been injured by the Defendants' discriminatory employment conduct.") (emphasis in original) (internal quotation marks and citations omitted); see also Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 178 (2011) (holding that Title VII only permits a "suit by any plaintiff with an interest 'arguably [sought] to be protected by the statute.'") (quoting National Credit Union Admin. v. First Nat. Bank & Trust Co., 522 U.S. 479, 495 (1998)).[10] But Plaintiff also alleges that

_____

[10]   Conceivably, that Defendants discriminated against other employees could support a claim that Plaintiff himself was discriminated against, but only if those other employees were members of the same protected class, discriminated against on the same basis as the Plaintiff. See, e.g., Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 310 (S.D.N.Y. 2001) ("Allegations of harassing acts against other employees may be relevant to a hostile work environment claim.

Defendants compelled him to conceal his sexual orientation from customers and made discriminatory comments concerning him. Am. Compl. at 2, 6. The Court thus finds clear error in the Magistrate Judge's finding that Plaintiff's employment discrimination claims concerning discrimination he allegedly endured should be dismissed on the basis of a lack of standing.

The Court, however, agrees with the Magistrate Judge's conclusion that these claims should be dismissed, albeit upon different reasoning. Specifically, Plaintiff has failed to exhaust administrative remedies as required. He has not alleged that he has obtained a right-to-sue letter from the federal Equal Employment Opportunity Commission; and he has not provided any excuse for failing to do so, let alone a valid one. See Bey v. Welsbach Elec. Corp., 38 F. App'x 690, 692 (2d Cir. 2002). "[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." Id. (quoting Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)). Any federal cause of action for discrimination under Title VII is thus dismissed without prejudice. See Rajaravivarma v. Bd. of Trustees for Connecticut State Univ. Sys., 862 F. Supp. 2d 127, 145 (D. Conn. 2012) ("Courts in this circuit have found that a plaintiff who commences a Title VII action before receiving a right-to-sue letter may nonetheless maintain the action upon subsequent receipt of the letter.") (internal quotation marks omitted) (collecting

_____

However, the other employees targeted must be in the same protected class as the plaintiff for the hostile work environment claim to withstand a motion to dismiss.") (internal citations omitted); Donahue v. Asia TV USA Ltd., 208 F. Supp. 3d 505, 517 (S.D.N.Y. 2016) (holding that allegations that the plaintiff's employer sexually harassed a co-worker did not support the plaintiff's national origin and age discrimination claims). Because the Court dismisses Plaintiff's discrimination claims on other grounds, the Court need not reach this issue.

cases).

### F. Fair Labor Standards Act

The FLSA provides that every covered employer shall pay to each of its employees a minimum of $7.25 per hour, 29 U.S.C. § 206(a), and additionally mandates that for any workweek longer than forty hours, a covered employer shall compensate all employees at one and one half times the regular rate. § 207(a)(1).[11] An employee may bring suit against his employer as long as either the employee himself is "engaged in commerce or in the production of goods for [interstate] commerce," or the employer is "an enterprise engaged in [interstate] commerce or in the production of goods for [interstate] commerce," with an annual gross volume of sales of at least $500,000. §§ 207(a)(1), 203(s)(1)(A)(ii), 203(b).

To state a claim for unpaid minimum or overtime wages under the FLSA, a plaintiff must allege that: (1) there is an employer-employee relationship; (2) the plaintiff's work or the employer's overall enterprise involves interstate commerce; and (3) the plaintiff worked for hours for which he did not receive minimum or overtime wages. See Lopez v. Emerald Staffing, Inc., No. 18-CV-2788, 2020 WL 915821, at *6 (S.D.N.Y. Feb. 26, 2020); Tackie v. Keff Enters. LLC, No. 14-CV-2074, 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014); Yunjian Lin v. Grand Sichuan 74 St. Inc., No. 15-CV-2950, 2019 WL 3409892, at *3 (S.D.N.Y. July 29, 2019).

Below, the Court reviews each element of Plaintiff's FLSA claim and evaluates the sufficiency of Plaintiff's allegations with respect to each of these three elements. While the Court

---

[11] The New York Labor Law imposes parallel requirements. See N.Y. LAB. LAW § 652; N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.2. Because the Court lacks supplemental jurisdiction over these state law claims, however, the Court at this time need not construe the Amended Complaint as asserting these claims.

finds that Plaintiff sufficiently alleges an employer-employee relationship, he has not explicitly alleged that the Farm was engaged in interstate commerce, as defined in the FLSA; and he has not alleged unpaid wages with sufficient specificity. Plaintiff's FLSA claims for unpaid minimum and/or overtime wages are dismissed without prejudice. Plaintiff has the opportunity to cure the deficiencies outlined below in a second amended complaint, should he choose to do so.

### 1. Employer-Employee Relationship

The term "employee" is defined broadly in the FLSA. The FLSA defines an "employee" simply as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and to "employ" as including "to suffer or permit to work," § 203(g). These are broad definitions by intention, in accordance with the remedial purposes of the FLSA. See States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945) (quoting Senator Hugo L. Black's statement on the floor of the Senate that the term "employee" had been given "the broadest definition that has ever been included in any one act."); Williams v. Epic Sec. Corp., 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019) ("Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy.") (internal quotation marks omitted) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). An entity "suffers or permits" an individual to work if, "as a matter of economic reality, the entity functions as the individual's employer." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (internal quotation marks omitted). This "economic reality" test is fact-intensive and considers the "totality of the circumstances" surrounding the worker's relationship with the enterprise. See Saleem v. Corp. Transp. Group, Ltd., 854 F.3d 131, 139 (2d Cir. 2017).

22

But while the definition of "employee" is broad, it does not cover persons "who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." See Tony & Susan Alamo Found v. Sec'y of Labor, 471 U.S. 290, 295 (1985) (quoting Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947)).

The Second Circuit has devised a variety of multi-factor tests, "for distinguishing employees from interns, domestic employees from family members, and employees from independent contractors." See Draskovic v. Oneota Assocs., LLC, 17-CV-5085, 2019 WL 783033, at *8 (E.D.N.Y. Feb. 21, 2019) (collecting cases). None of these tests are perfectly suited to the circumstances of this case. Plaintiff worked in a family operation and maintained a romantic and familial relationship with the son of the owner that coincided roughly with Plaintiff's term of employment. Plaintiff's domestic life and work life overlapped in a complex manner that may implicate the subtle boundaries of the statutory concept of "employee."

However, several well-established indicators of the economic reality of an employment relationship are present in this case. First, Plaintiff alleges that he worked with the expectation of compensation, even if other dynamics were at play. See Draskovic, 2019 WL 783033, at *8 ("[T]he FLSA's broad definition of 'employ'— 'to suffer or permit to work'—is 'obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.'") (quoting Walling, 330 U.S. at 152). "However, 'some motivation to work in addition to material gain[] does not preclude the application of the FLSA.'" Id. (quoting Velez v. Sanchez, 693 F.3d 308, 328 (2d Cir. 2012)). Plaintiff was promised compensation in the form of ultimate co-ownership of the Farm, and he forwent a traditional paycheck only in reliance on this other form of compensation

as a substitute. See Am. Compl. at 2; Compl. at 2, 19, 21. Second, Plaintiff apparently had a distinct occupation on the Farm, through which he added economic value, as opposed to merely assisting William Yandik or another employee with their own assigned tasks. Cf. Figurowski v. Marbil Investors, LLC, 14-CV-7032, 2018 U.S. Dist. LEXIS 54756, at *24–30 (E.D.N.Y. Mar. 30, 2018) (finding no employment relationship where a woman helped her husband perform tasks he was hired to perform, such that she did not provide his employer with a benefit). Third, given the apparently frequent contact between Plaintiff and the owner, there can be no question that the Farm had knowledge of Plaintiff's labor and consented to it, such that the Farm "suffered" or "permitted" him to work. Cf. Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998) ("While an employer must pay for work it suffers or permits, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing.") (internal citation omitted).

The Court notes that there are a variety of specific exemptions from the definition of "employee" for purposes of FLSA coverage. See 29 U.S.C. § 213(a)–(b). But it is Defendants' burden to prove that Plaintiff is exempt. See Dejesus v. HF Mgmt. Servs., LLC, No. 12-CV-1298, 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012), aff'd, 726 F.3d 85 (2d Cir. 2013).

In light of the foregoing, Plaintiff plausibly alleges that there was an employer-employee relationship.

### 2.  Interstate Activity

To adequately allege interstate activity for purposes of employer coverage, a plaintiff must state in the complaint that the defendant company: (a) is engaged in interstate commerce;

(b) has at least two employees; and (c) has gross sales of not less than $500,000.[12] See Yunjian

Lin, 2019 WL 3409892, at *4; Ramos v. Greenwich Catering Corp., No. 18-CV-4790, 2020 WL

619928, at *2 (S.D.N.Y. Jan. 15, 2020), report and recommendation adopted by 2020 WL

615030 (S.D.N.Y. Feb. 7, 2020).

In practice, nearly all businesses, including most local businesses, move goods through

interstate commerce, for purposes of FLSA coverage, making this an easy threshold requirement

to meet. A business does not have to directly order supplies from out of state or directly ship

goods to customers out of state; it is sufficient that employees of the business "merely handled

supplies or equipment that originated out-of-state." Rodriguez v. Almighty Cleaning, Inc., 784 F.

Supp. 2d 114, 121 (E.D.N.Y. 2011). In the modern economy, this is nearly always the case. See,

e.g., Velez v. Vassallo, 203 F. Supp. 2d 312, 328 (S.D.N.Y. 2002) ("[T]he employee does not

himself need to be involved in an activity that affects interstate commerce; even a local laundry is

covered if the soap it uses moved in interstate commerce.") (internal quotation marks and

---

[12]   Alternatively, under the FLSA's individual coverage provision, any employee who is
himself "engaged in commerce or in the production of goods for commerce" as part of his
particular function in a workplace is covered by the Act, irrespective of whether the enterprise as
a whole is engaged in interstate commerce or has a gross volume of sales of at least $500,000. 29
U.S.C. §§ 206(a), 207(a)(1); see Brennan v. Arnheim & Neely, Inc., 410 U.S. 512, 516–17
(1973). To be "engaged in commerce," the employee must perform work "involving or related to
the movement of persons or things . . . among the several States or between any State and any
place outside thereof." 29 C.F.R. § 779.103. The plaintiff must work "in the channels" of
"interstate or foreign commerce," or "in activities so closely related to this commerce, as to be
considered a part of it," e.g., "regular[] use [of] the mails, telephone or telegraph for interstate
communication" or "regular[] travel across State lines while working." Id. Activities that simply
"affect or indirectly relate to interstate commerce" are insufficient. McLeod v. Threlkeld, 319
U.S. 491, 497 (1943). As a basic rule, "if [the plaintiff] did not have any contact with out-of-state
customers or businesses, he cannot be individually covered under the FLSA." Li v. Cheng, No.
10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012); see also Ethelberth v. Choice
Sec. Co., 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015).

citations omitted).

Nevertheless, a plaintiff must, at a minimum, simply *state* that the company moves goods through interstate commerce. A court cannot infer this from a mere list of the plaintiff's job responsibilities, however obvious the inference may be. See Payamps v. M & M Convenience Deli & Grocery Corp., No. 16-CV-4895, 2018 WL 3742696, at *9 (E.D.N.Y. May 18, 2018) ("To properly allege . . . enterprise coverage, [a plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce.") (internal quotation marks and alterations omitted), report and recommendation adopted by 2018 U.S. Dist. LEXIS 156601 (E.D.N.Y. Sept. 12, 2018); id. at 23 ("It is a near universal consensus that a plaintiff has to say *something* about whether the employer is engaged in interstate commerce or what subjects the employer to FLSA.") (emphasis in original); Kaplan v. Wings of Hope Residence, Inc., No. 18-CV-2972, 2018 WL 6437069, at *7 (E.D.N.Y. Dec. 7, 2018) ("[W]ithout even a bare assertion that any of the employees' tasks involved interstate commerce, the Plaintiff's allegations are insufficient.").

The same is true of the accompanying requirements that the defendant company have at least two employees and at least $500,000 in gross sales—these facts must be stated in the complaint. See Ramos, 2020 U.S. Dist. LEXIS 7907, at *5 ("Plaintiffs adequately plead [employer coverage] by alleging that the corporate defendants employ at least two employees and have annual gross sales greater than $500,000."); Millennium Super Car Wash, Inc., No. 12-CV-4760, 2013 WL 6021668, at *5 (E.D.N.Y. Nov. 13, 2013) (denying default judgment in part because "plaintiff has failed to allege that defendant had an annual gross volume of sales

26

equal to or greater than $500,000, as is required by the statute."). Plaintiff alleges that the Farm

has at least two employees, see, e.g., Am. Compl. at 3 (mentioning "employees, including the

Plaintiff"), but he does not allege that it has gross annual sales of at least $500,000.

The Court thus finds that Plaintiff has failed to satisfy the second element of an FLSA

claim for unpaid wages. Specifically, while Plaintiff has alleged that the Farm has at least two

employees, he has failed to allege that the Farm moves goods through interstate commerce and

has an annual gross sales volume of at least $500,000.

### 3. *Unpaid Wages*

To state a claim under the FLSA for a minimum wage or overtime wage violation, a

plaintiff must allege at least an approximation of the hours he worked for an employer for which

he received insufficient compensation, throughout the plaintiff's term of employment. See Zhong

v. Aug. Aug. Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) ("[W]here the plaintiff alleges

violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least

approximately, allege the hours worked for which these wages were not received."); Pineda v.

Tokana Cafe Bar Restorant Inc., No. 16-CV-1155, 2017 WL 1194242, at *2 (S.D.N.Y. Mar. 30,

2017) ("To state a FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about

her salary and working hours, such that a simple arithmetical calculation can be used to

determine the amount owed per pay period."). And to the extent that a plaintiff wishes to claim

unpaid overtime compensation, he must approximate the hours he worked on a weekly basis.

Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013) ("To

plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length

and frequency of their unpaid work to support a reasonable inference that they worked more than

forty hours in a given week.").

Plaintiff has not alleged this element with sufficient specificity. Plaintiff has clearly stated that he was not compensated for any of his labor over a roughly three-year period. See Am. Compl. at 2. But more is required—Plaintiff must provide, at the very least, a rough approximation of how many hours he worked throughout his employment. And given that Plaintiff seems to suggest that his weekly hours fluctuated significantly over time, see id. at 12, 14, ascertaining the total number of hours he worked likely requires a rough account of changes in his weekly work schedule over time. Specifying hours worked per week and fluctuations in weekly hours over time is even more essential to his claim for unpaid overtime wages, as overtime wages are assessed on a weekly basis. See Nakahata, 723 F.3d at 201.

Because Plaintiff has failed to sufficiently plead both an FLSA claim for failure to pay minimum wage and an FLSA claim for failure to pay overtime wages, those claims are dismissed without prejudice.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Second Report-Recommendation (Dkt. No. 11) is **APPROVED and ADOPTED** to the extent it recommends dismissing Plaintiff's claims, but **MODIFIED** to the extent that it recommends dismissal of Plaintiff's employment discrimination claims for lack of standing; and it is further

**ORDERED**, that Plaintiff's RICO claims against all Defendants are **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiff's § 1983 claims against Defendants Eileen Yandik and

William Yandik are **DISMISSED without prejudice**; and it is further

      **ORDERED**, that Plaintiff's Title VII claims for discrimination on the basis of race,

religion, and sex against the Farm are **DISMISSED without prejudice**; and it is further

      **ORDERED**, that Plaintiff's FLSA claims against the Farm are **DISMISSED without**

**prejudice**; and it is further

      **ORDERED**, that all state law claims are **DISMISSED without prejudice**; and it is

further

      **ORDERED**, that if Plaintiff wishes to proceed with this action, he must file a second

amended complaint within **thirty days** from the filing date of this Memorandum-Decision and

Order.[13] **If Plaintiff fails to file a second amended complaint in that time, the case shall be**

**dismissed without further order of the Court**; and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on Plaintiff in accordance with the Local Rules.

      **IT IS SO ORDERED.**

DATED:    May 01, 2020
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[13]  If Plaintiff chooses to submit a second amended complaint, it must comply with Rule 15 of the Federal Rules of Civil Procedure. Moreover, a second amended complaint, which shall supersede and replace the Amended Complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant, which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Finally, any amended complaint must also be signed by Plaintiff and comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.