UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMIR M. HAMZA,

                        Plaintiff,

    -against-                                       1:19-CV-0447 (LEK/DJS)

EILEEN YANDIK, *et al.*,

                        Defendants.
_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Amir Hamza brings this pro se action against Eileen Yandik, William Yandik, Stephen Yandik, and Green Acres Farm (collectively, "Defendants"). Plaintiff originally filed a complaint in this action on April 15, 2019. Dkt. No. 1 ("Complaint"). On May 14, 2019, the Honorable Daniel J. Stewart, United State Magistrate Judge, reviewed the Complaint under 28 U.S.C. § 1915(e)(2)(B) and recommended that all claims be dismissed for failure to state a claim upon which relief may be granted, but with leave to amend. Dkt. No. 6 ("First Report-Recommendation"). Plaintiff filed no objections to the First Report-Recommendation, but rather filed an Amended Complaint. Dkt. No. 9 ("Amended Complaint"). On June 27, 2019, the Magistrate Judge reviewed the Amended Complaint under § 1915(e)(2)(B) and again recommended the dismissal of all claims for failure to state a claim upon which relief may be granted, while granting leave to amend. Dkt. No. 11 ("Second Report-Recommendation"). On July 12, 2019, Plaintiff submitted objections to the Second Report-Recommendation. Dkt. No. 13 ("Objections"). On May 1, 2020, this Court adopted the Second Report-Recommendation with respect to its conclusions while modifying certain aspects of its reasoning, and granted Plaintiff

leave to amend. Dkt. No. 14 ("May 2020 Order").

Before the Court is Plaintiff's second amended complaint, in which he asserts federal claims under the Fair Labor Standards Act ("FLSA") and Racketeer Influenced and Corrupt Organizations Act ("RICO"), state statutory claims under the New York Labor Law ("NYLL") and New York Domestic Relations Law ("DRL"), and common law claims for breach of contract and intentional infliction of emotional distress ("IIED"). Dkt. Nos. 19 ("Second Amended Complaint" or "SAC"); 19-1 ("Exhibits"); 21 ("Supplemental Time Sheets"). For the reasons that follow, Plaintiff's FLSA, NYLL, and breach of contract claims survive *sua sponte* review and require a response.

## II.   BACKGROUND

### A. Plaintiff's Factual Allegations

Plaintiff's Second Amended Complaint is not a complete pleading, in that it does not provide a comprehensive statement of his factual allegations. Rather, the Second Amended Complaint adds certain allegations with the intention of curing pleading defects identified in the May 2020 Order. The Court assumes the parties' familiarity with the May 2020 Order and details new factual allegations in the course of analyzing the sufficiency of Plaintiff's claims. See, e.g., Portillo v. City of New York, No. 17-CV-5448, 2018 U.S. Dist. LEXIS 99364, at *3 n.3 (S.D.N.Y. Jun. 12, 2018) ("[W]here a plaintiff is proceeding pro se and appears to have intended to 'supplement' his initial complaint with an amended complaint, the Court may consider relevant factual allegations contained in, and exhibits attached to, the prior complaint for purposes of deciding a motion to dismiss.").

For convenience, the Court briefly summarizes allegations relevant to Plaintiff's claims in

the Second Amended Complaint. Between June 2013 and October 2016, Plaintiff worked at Green Acres Farm (the "Farm"), which is located in New York State. May 2020 Order at 2–3. The Farm is owned and operated by Eileen Yandik. Id. at 3. William Yandik, Eileen Yandik's son, was Plaintiff's supervisor at the Farm. Id. Stephen Yandik, whose relationship to the other defendants Plaintiff does not specify, oversaw payroll at the Farm during the relevant time period. Id. Eileen, William, and Stephen Yandik are all New York residents. Id.

In June 2013, around the time that Plaintiff began working at the Farm, he and William Yandik initiated a romantic relationship. Id. On July 15, 2014, Plaintiff and William Yandik signed a legal agreement by which they arranged to have a child via a surrogate. Id. at 3. On May 11, 2015, Plaintiff and William Yandik married. Id. Their child was born on April 8, 2016. Id.

Plaintiff's job responsibilities at the Farm included planting trees, clearing fields, cleaning, operating a cash register, managing the Farm store, preparing bakery items, and an assortment of other tasks. Id. For the duration of his employment on the Farm, Plaintiff was not compensated for his labor. Id. Plaintiff submits time sheets estimating the hours he worked between 2013 and 2016. See SAC, Ex. H ("Time Sheets"); Supp. Time Sheets.

Defendants repeatedly made verbal promises to Plaintiff that he would be made partial owner of the farm "if he continued to earn ownership through 'sweat equity'." SAC ¶ 53. "As time went on," Plaintiff requested a formal written contract to this effect, but none was ever formed. See id. Despite performing under the alleged oral contract through his labor, Plaintiff was never made partial owner. May 2020 Order at 4.

Plaintiff also alleges that Defendants underreported the Farm's cash income to the Internal Revenue Service. See SAC ¶¶ 46, 48, 51–52. Relatedly, William Yandik underreported

his "income and benefits" from his work on the Farm to the New York Supreme Court, in order to obtain child support and spousal support. Id ¶ 61.

Separately, Plaintiff alleges that his marriage to William Yandik "was a fraudulent scheme devised by William Yandik for the Plaintiff to help pay for a surrogacy." Id. ¶ 60.

### B. Claims

In his Second Amended Complaint, Plaintiff drops certain claims he previously asserted and adds other claims. Plaintiff no longer asserts Fourth Amendment claims under § 1983, employment discrimination claims under Title VII of the Civil Rights Act of 1964, or defamation claims. See generally SAC. He has narrowed the range of predicate statutory violations for his RICO claims, as detailed below. He newly asserts a state law claim under "NY DPL 140," see id. ¶¶ 54–61, which the Court construes as a claim under the New York Domestic Relations Law ("DRL"). He also asserts an intentional infliction of emotional distress claim. See id. ¶¶ 62–87. Plaintiff continues to assert claims under the FLSA and NYLL, see id. ¶¶ 31–41, and a claim for breach of contract, id. ¶ 53.

In summary, the Court construes the following claims: (1) FLSA claims against the Farm; (2) NYLL claims against the Farm; (3) a breach of contract claim against all defendants; (4) RICO claims against all defendants; (5) a claim under DRL § 140 against William Yandik; and (6) an IIED claim against all defendants.

### III. STANDARD OF REVIEW

When a plaintiff seeks to proceed *in forma pauperis* ("IFP"), "the court shall dismiss the case at any time" if the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such

relief." 28 U.S.C. § 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action IFP, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint before permitting the plaintiff to proceed IFP. See id.[1]

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will

---

[1] Plaintiff objects to being subjected to *sua sponte* review. See SAC ¶¶ 10–12. Because Plaintiff filed a motion to proceed *in forma pauperis*, see Dkt. No. 2, which was granted, Dkt. No. 4, his pleadings are subject to sufficiency review under § 1915. See, e.g. Kavazanjian v. Naples, No. 06-CV-3390, 2006 WL 2795220, at *1 (E.D.N.Y. Sept. 26, 2006) (conducting *sua sponte* review in an FLSA action brought by a non-incarcerated plaintiff).

not suffice. Id. (internal quotation marks and alterations omitted).[2]

Pro se pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). The Court should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

In the May 2020 order, the Court noted that based on Plaintiff's allegations, all parties to this case appear to be residents of New York, which would preclude diversity jurisdiction under 28 U.S.C. § 1332. See Second R. & R. at 4–5; see also Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001) ("[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships."). The magistrate judge had noted that while Plaintiff asserted in his Amended Complaint that he was a resident of Dover, Delaware, this allegation was inconsistent with Plaintiff's representations in filings before this Court and a court in a separate action in the District of New Jersey that he was a resident of Philmont, New York. See Second R. & R. at 4.

Plaintiff now clarifies this apparent contradiction. He alleges that at the time he filed the Complaint, he held a Delaware driver's license, owned a vehicle registered in Delaware, had

---

[2] Plaintiff offers a lengthy, and at times compelling moral critique of the pleading standards established by *Twombly* and *Iqbal*. SAC ¶¶ 13–30. But Plaintiff does not dispute that the Court is bound by these standards. See id.

6

Delaware automobile insurance, and was registered to vote in Delaware, and asserts on this basis that he was domiciled in Delaware. See SAC ¶ 4. He explains that the Philmont, New York address he provided to this Court and a court in the District of New Jersey belongs to a limited liability company he partially owns. See id.

For purposes of this Memorandum-Decision and Order, the Court tentatively entertains the possibility that it has diversity jurisdiction over this action. In any case, the Court has federal question jurisdiction over surviving federal claims, and, as noted below, likely has supplemental jurisdiction over surviving state law claims.

**B. FLSA and NYLL**

To state a claim for unpaid minimum or overtime wages under the FLSA, a plaintiff must allege that: (1) there is an employer-employee relationship; (2) the plaintiff's work or the employer's overall enterprise involves interstate commerce; and (3) the plaintiff worked for hours for which he did not receive minimum or overtime wages. See Lopez v. Emerald Staffing, Inc., No. 18-CV-2788, 2020 WL 915821, at *6 (S.D.N.Y. Feb. 26, 2020); Tackie v. Keff Enters. LLC, No. 14-CV-2074, 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014); Yunjian Lin v. Grand Sichuan 74 St. Inc., No. 15-CV-2950, 2019 WL 3409892, at *3 (S.D.N.Y. July 29, 2019). NYLL standards are analogous, except that the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales." Gomez v. El Rancho De Andres Carne De Tres Inc., No. 12-CV-1264, 2014 U.S. Dist. LEXIS 45580, at *12 (E.D.N.Y. Mar. 11, 2014) (quoting Chun Jie Yin v. Kim, No. 07-CV-1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 3, 2008); see also N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1).

In ascertaining whether an employer-employee relationship exists, the Court is guided by the following principles. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a). An "employee" is "any individual employed by an employer[.]" § 203(e)(1). To "employ" is to "suffer or permit to work." § 203(g).

These are broad definitions by intention, in accordance with the remedial purposes of the FLSA. See States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945) (quoting Senator Hugo L. Black's statement on the Senate floor that the term "employee" had been given "the broadest definition that has ever been included in any one act"); Williams v. Epic Sec. Corp., 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019) ("Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy.") (internal quotation marks omitted) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). An entity "suffers or permits" an individual to work if, "as a matter of economic reality, the entity functions as the individual's employer." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (internal quotation marks omitted). This "economic reality" test is fact-intensive and considers the "totality of the circumstances" surrounding the worker's relationship with the enterprise. See Saleem v. Corp. Transp. Group, Ltd., 854 F.3d 131, 139 (2d Cir. 2017). The FLSA's definition of 'employ' is "obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." Draskovic v. Oneota Assocs., LLC, No. 17-CV-5085, 2019 WL 783033, at *8 (E.D.N.Y. Feb. 21, 2019) (quoting Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947).

"However, 'some motivation to work in addition to material gain[] does not preclude the application of the FLSA.'" Id. (quoting Velez v. Sanchez, 693 F.3d 308, 328 (2d Cir. 2012)).

There are potentially applicable exemptions from the definition of "employee" under both statutes. The FLSA contains an exemption for "individual[s] employed by an employer engaged in agriculture if such individual is the parent, spouse, child, or other member of the employer's immediate family." 29 U.S.C. § 203(E)(3). On July 17, 2019, the New York State Legislature enacted the Farm Laborers Fair Labor Practices Act ("FLFLPA") to extend wage-and-hour protections to agricultural workers. See New York State Vegetable Growers Ass'n, Inc. v. Cuomo, 474 F. Supp. 3d 572, 576 (W.D.N.Y. 2020). For purposes of state wage-and-hour protections, "employee" includes "any individual employed or permitted to work by an employer on a farm but shall not include: . . . (b) the parent, spouse, child or other member of the employer's immediate family[.]" N.Y. Lab. Law § 671(2). New York State has promulgated guidance for the FLFLPA specifying that a worker is considered an member of an employer's immediate family if he is (1) related to the employer by the third degree of consanguinity or affinity; and (2) works on a farm out of familial obligations; and (3) is not paid wages or other compensation based on his hours or days of work. *Frequently Asked Questions about the Farm Laborers Fair Labor Practices Act*, New York State Department of Labor, https://labor.ny.gov/immigrants/farm-laborers-fair-labor-practices-act/flflpa-frequently-asked-questions.pdf (last visited Jan. 29, 2021). This guidance defines the third degree of "consanguinity" to include employer's children, grandchildren, great-grandchildren, parents, siblings, nieces/nephews, grandparents, aunts/uncles and great-grandparents. Id. This guidance, however, fails to define the three degrees of affinity. See id. Furthermore, there is no guidance or case law

illuminating what constitutes "familial obligation." One court has briefly alluded to this definitional ambiguity without addressing it. See New York State Vegetable Growers Ass'n, 474 F. Supp. 3d at 584 n.4.

To adequately allege interstate activity for purposes of employer coverage under the FLSA, a plaintiff must state in the complaint that the defendant-employer: (a) is engaged in interstate commerce; (b) has at least two employees; and (c) has gross sales of not less than $500,000. See Yunjian Lin, 2019 WL 3409892, at *4; Ramos v. Greenwich Catering Corp., No. 18-CV-4790, 2020 WL 619928, at *2 (S.D.N.Y. Jan. 15, 2020), report and recommendation adopted, No. 18-CV-4790, 2020 WL 615030 (S.D.N.Y. Feb. 7, 2020).

Additionally, to state a claim under the FLSA for a minimum wage or overtime wage violation, a plaintiff must allege at least an approximation of the hours he worked for an employer for which he received insufficient compensation, throughout the plaintiff's term of employment. See Zhong v. Aug. Aug. Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) ("[W]here the plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received."); Pineda v. Tokana Cafe Bar Restorant Inc., No. 16-CV-1155, 2017 WL 1194242, at *2 (S.D.N.Y. Mar. 30, 2017) ("To state a FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period."). And to the extent that a plaintiff wishes to claim unpaid overtime compensation, he must approximate the hours he worked on a weekly basis. Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must

provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."). The same standards apply to NYLL claims. See Gomez, 2014 U.S. Dist. LEXIS 45580, at *12.

The FLSA has a two-year statute of limitations that extends to three years for willful violations. 29 U.S.C. § 255. On the other hand, the NYLL has a six-year statute of limitations, regardless of willfulness. N.Y. Lab. Law § 663.

Since the Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, the Court potentially has supplemental jurisdiction over the NYLL claim pursuant to 28 U.S.C. § 1367(a). See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) ("[T]he NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices"). And if supplemental jurisdiction exists, Plaintiff may avail himself of the NYLL statute of limitations. See, e.g., Martinez v. Alimentos Saludables Corp., No. 16-CR-1997, 2017 U.S. Dist. LEXIS 156657, at *27–28 (E.D.N.Y. Sept. 22, 2017); Chocolatl v. Rendezvous Cafe, Inc., No. 18-CV-3372, 2019 WL 5694104, at *10 n.12 (E.D.N.Y. Aug. 16, 2019), report and recommendation adopted, No. 18-CV-3372, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Plaintiff alleges that he was an employee who worked with an expectation of compensation of some form—perhaps in the form of partial ownership of the Farm, perhaps in the form of wages, or perhaps both. See May Order at 23–24; SAC ¶¶ 33–35. He alleges that the Farm was engaged in interstate commerce through the purchase of products outside of New York State, see SAC ¶ 37(a) ("Green Acres Farm engages in interstate commerce by purchasing products from different producers which are located outside of New York, specifically, the Sara

Lee Chef Pierre Pies and other retail products."), had two or more employees, see id. ¶ 37(b), and had gross sales above $500,000, see id. ¶ 37(c). He specifies that he worked 625 hours in 2013, 997 hours in 2014, and 1129 hours in 2015. See SAC ¶ 39; Time Sheets. Plaintiff estimates he worked 124 hours of overtime in 2013, 293 hours of overtime in 2014, and 301 hours of overtime in 2015. See SAC ¶ 39; Time Sheets. Plaintiff alleges he worked twenty-five hours in 2016. See Supp. Time Sheets.

Plaintiff's FLSA and NYLL minimum wage and overtime claims against the Farm survive *sua sponte* review and require a response. The Court expresses no view as to whether these claims can survive a properly filed dispositive motion.

**C. Breach of Contract**

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

"Under New York's Statute of Frauds, an oral agreement is void if it 'is not to be performed within one year from [its] making,' and there is no written memorandum of the agreement 'subscribed by the party to be charged.'" Camp Summit of Summitville, Inc. v. Visinski, No. 06-CV-4994, 2007 U.S. Dist. LEXIS 28496, at *13–14 (S.D.N.Y. Apr. 13, 2007) (quoting N.Y. Gen. Oblig. Law § 5-701(a)(1))." In determining whether an oral contract could be performed within one year, "'[t]he question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable

12

interpretation of its terms, required that it should not be performed within the year.'" D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 454 (N.Y. 1984) (quoting Warner v. Texas & Pacific Ry., 164 U.S. 418, 434 (1896)).

Because an at-will employment relationship "can be terminated by either party for any reason or without reason . . . . [a]n at-will employment relationship may . . . usually be completed within a year." Guilbert v. Gardner, 480 F.3d 140, 151 (2d Cir. 2007) (citing Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 367 (N.Y. 1998)). Accordingly, "employment agreements of this type are without the proscription of the Statute of Frauds concerning one-year performance." Cron, 91 N.Y.2d at 367; see also Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 463 (N.Y. 1982) (holding that an employment agreement, "whether terminable at-will or only for just cause, is not one which, by its terms, could not be performed within one year and, therefore, is not one which is barred").

Since the Court has federal question jurisdiction over Plaintiff's FLSA claims, the Court potentially has supplemental jurisdiction over his breach of contract claim. See, e.g., Zhirzhan v. AGL Indus., Inc., No. 14-CV-7567, 2015 WL 13742429, at *14 (E.D.N.Y. Sept. 15, 2015) ("The FLSA and breach of contract claims are sufficiently related to one another to warrant the court's exercise of supplemental jurisdiction over the breach of contract claims. Initially, both emerge from the plaintiffs' employment as construction workers for the defendants, for which they are alleged not to have received proper pay.").

Liberally construing Plaintiff's allegations, the Court finds that he alleges he entered into an oral employment contract to which Defendants were all parties. See SAC ¶ 53. Plaintiff alleges that he fulfilled his obligations under the contract by performing various forms of labor

13

on the Farm, and that defendants failed to perform their obligation to grant Plaintiff partial ownership of the Farm in return. See id.; May 2020 Order at 4. Plaintiff's breach of contract claim survives *sua sponte* review and requires a response. The Court expresses no view as to whether this claim can survive a properly filed dispositive motion.

### D. RICO

RICO grants standing to pursue a civil damages remedy to "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). The statute "imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity.'" Reich v. Lopez, 858 F.3d 55, 59 (2d Cir. 2017) (quoting 18 U.S.C. §§ 1962, 1964). A plaintiff asserting a RICO violation must adequately plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to plaintiff's business or property, and (3) the causation of the injury by the defendant's violation." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 283 (2d Cir. 2006) (citations and internal quotation marks omitted; alteration in original). To adequately plead the causation element of a RICO claim, the plaintiff must allege that the defendant's conduct was the "legal, or proximate, cause of [his] injury, as well as the logical, or 'but for,' cause." Id. at 283–84 (quoting Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., 271 F.3d 374, 380 (2d Cir. 2001)).

Plaintiff asserts RICO claims predicated on Defendants' alleged violations of §§ 1341 and 1345. With respect to his claims based on § 1341, Plaintiff alleges that Defendants "knowingly mail[ed] fraudulent tax returns to the IRS with the aim of defrauding the IRS." SAC ¶ 46. Plaintiff alleges that the Farm accepts all payments from customers in cash and pays its employees exclusively in cash, and that Defendants underreport the Farm's cash income to the

IRS. See id. ¶¶ 48, 51. Regarding Plaintiff's injury, Plaintiff alleges, first, that Defendants misrepresented to Plaintiff that they could not afford to pay him for his labor, while enriching themselves by evading taxes. See id. ¶ 52. Second, Plaintiff alleges that William Yandik "underreported his income and benefits he earns from" the Farm, which enabled him to obtain better child support and spousal support terms in a state court divorce proceeding that he otherwise could have. See id. ¶ 61.

Plaintiff does not state any claim under RICO. His § 1341 claim based on a connection between unpaid wages and Defendants' underreporting Farm income to the IRS is dismissed, because there is no but-for causation: Plaintiff offers no basis for the Court to conclude that Defendants would have paid him for his labor had they paid the taxes they owed.

Plaintiff's § 1341 claim against William Yandik is dismissed for lack of proximate causation. Plaintiff's legal theory appears to be that William Yandik made false representations to the IRS, which he then repeated to a state court, which then relied on that information in determining child support and spousal support amounts. Even if the Court granted Plaintiff the favorable inference that the state court judge relied on the relevant misrepresentations, the Court would still find the alleged causal relationship between William Yandik's misrepresentation to the IRS and Plaintiff's economic loss to be far too attenuated. See Falise v. Am. Tobacco Co., 94 F. Supp. 2d 316, 334 (E.D.N.Y. 2000) ("[I]f the defendant's misrepresentations cause a third party to take actions causing plaintiff's injury, the factual causation link is satisfied. Whether such injury should nevertheless be deemed too remote to permit recovery under [civil RICO] is a matter of proximate causation analysis, not causation-in-fact.") (quoting Arthur F. Mathews, Andrew B. Weissman, & John H. Sturc, 2 *Civil RICO Litigation* § 8.04(B)(1)(a) (2d ed. 1992));

Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457–58 (2006) (proximate cause not met where a state tax authority, not the plaintiff, relied on defendant's alleged mail and wire fraud related to underpayment of sales taxes).

Plaintiff's RICO claim predicated on alleged violations of § 1345 is dismissed. Section 1345 is not a source of a RICO predicate; rather, § 1345 is a provision authorizing injunctive relief to address ongoing violations of the mail, wire or bank fraud statutes. See United States v. William Savran & Assoc., 755 F. Supp. 1165, 1177–78 (E.D.N.Y. 1991).

Because Plaintiff has failed to state any RICO claim after multiple amendments, Plaintiff's RICO claims are dismissed with prejudice. See, e.g., Hardaway v. City of Hartford, No. 16-CV-115, 2016 U.S. Dist. LEXIS 199614, at *6 (D. Conn. July 5, 2016) ("Where, as here, a plaintiff has had multiple opportunities to amend the pleadings and still fails to state a claim, . . . dismissal with prejudice of claims that remain lacking is appropriate.").

### E.  NY DRL § 140

Section 140 of the New York Domestic Relations Law creates a cause of action for annulment of marriage. See generally NY DRL § 140; Valente v Cabral, 177 A.D.3d 810, 810 (N.Y. App. Div. 2d Dep't 2019). This Court lacks subject matter jurisdiction over this claim. See Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993) ("The domestic relations exception to federal subject matter jurisdiction is based on the policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack.").

Because this claim is substantively defective and could not be cured by better pleading, it is dismissed with prejudice. See, e.g., Barnes v. Crist, No. 13-CV-505, 2014 WL 1293408, at *1

16

(N.D.N.Y. Mar. 28, 2014) ("[A]n opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. . . . This rule applies even to pro se plaintiffs.").

### F. Intentional Infliction of Emotional Distress

Under New York law, "a claim for IIED requires a showing of: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. N.Y. Post Co., Inc., 81 N.Y.2d 115, 122 (N.Y. 1993). "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Campoverde v. Sony Pictures Entm't, No. 01-CV-7775, 2002 U.S. Dist. LEXIS 18347, at *34 (S.D.N.Y. 2002) (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303 (N.Y. 1983)).

Plaintiff alleges that Defendants "utilized the[ir] position[s] in [local] government to slander and make false statements regarding the Plaintiff, including[] that the Plaintiff was a danger to the child," to "public officials, judges, and law enforcement." SAC ¶ 63. He alleges that as a result of these actions, Plaintiff is "subject to monitoring by the Columbia County Sheriff's," and states that he has acquired a "label" in the eyes of law enforcement that is "difficult to remove." Id. Separately, Plaintiff alleges "Defendants use[d] expletives, yelled and screamed at the Plaintiff, and made verbal threats to the Plaintiff and his stepfather." SAC ¶ 63.

Plaintiff fails to state a claim, for a few reasons. First, the Court has no contextual

17


information pertaining to Defendants' allegedly false statements to government officials about Plaintiff's fitness as a parent. And such statements are not inherently "outrageous," particularly if not communicated with knowledge of their falsity. See, e.g., De Ratafia v. Cty. of Columbia, No. 13-CV-174, 2013 WL 5423871, at *17 (N.D.N.Y. Sept. 26, 2013) ("Here, plaintiffs assert that [defendant] made false allegations to the defendant Deputy Sheriffs . . .These allegations do not describe conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal quotation marks omitted). Plaintiff also does not allege any facts indicating that Defendants harbored an "intent to cause, or disregard of a substantial probability of causing, severe emotional distress." Howell, 81 N.Y.2d at 122.

Moreover, Plaintiff's allegations regarding verbal abuse by Defendants are far too vague to give rise to a claim. Because insults and threats do not necessarily support an IIED claim (and indeed typically do not), and because Plaintiff provides only an abstract account of what transpired, Plaintiff's IIED claim based on alleged verbal abuse is dismissed. See, e.g., 164 Mulberry St. Corp. v. Columbia Univ., 4 A.D.3d 49, 56 (N.Y. App. Div. 1st Dep't 2004) ("The conduct must consist of more than mere insults, indignities and annoyances[.]").

In summary, while Plaintiff conceivably could state a claim with the addition of more detailed allegations, there are many obstacles he would have to surmount to do.[3]

---

[3] The Court also advises Plaintiff that the statute of limitations for IIED claims is one year. See Teller v Galak, 162 A.D.3d 959, 960 (N.Y. App. Div. 2d Dep't 2018); NY CPLR § 215(3). Since Plaintiff does not specify dates for the relevant events, the Court cannot determine at this early stage whether the statute of limitations has run; but in all likelihood, it has.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's FLSA and NYLL claims against the Farm and Plaintiff's breach of contract claim against all Defendants survive *sua sponte* review and require a response; and it is further

**ORDERED**, that Plaintiff's RICO and NY DRL claims are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's IIED claim is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on Plaintiff in accordance with the Local Rules; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service on Defendants.

**IT IS SO ORDERED.**

DATED:    January 29, 2021
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge