UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMIR M. HAMZA,

                              Plaintiff,

        -against-                                        1:19-CV-00447 (LEK/DJS)

EILEEN YANDIK, *et al.*,

                              Defendants.
_____

### MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff Amir Hamza brings this pro se action against Defendants Eileen Yandik, Stephen Yandik, William Yandik, and Green Acre Farms (collectively, "Defendants"). Dkt. Nos. 19, 21 ("Second Amended Complaint"). Green Acre Farms is a sole proprietorship owned by Eileen Yandik. Dkt. No. 43-3 ("Declaration of William Yandik") at 1. Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure (FRCP) as well as to declare Plaintiff a vexatious litigant and to enjoin Plaintiff from filing further federal lawsuits against Defendants. Dkt. Nos. 43 ("Defendants' Motion"), 43-1 ("Defendants' Memorandum of Law"). Plaintiff opposes Defendants' motion to dismiss as well as to declare Plaintiff a vexatious litigant and to enjoin Plaintiff from further federal litigation against Defendants. Dkt. No. 45 ("Plaintiff's Response"). Defendants have filed a reply. Dkt. No. 47 ("Defendants' Reply"). For the reasons that follow, Defendants' motion is denied.

II.     **BACKGROUND**

On May 14, 2019, the Honorable Daniel J. Stewart, United States Magistrate Judge, granted Plaintiff's Motion for Leave to Proceed in forma pauperis. Dkt. No. 5, <u>see also</u> Dkt. No. 2. After filing two earlier iterations of a complaint, Dkt. Nos. 1, 9, Plaintiff filed a second amended complaint on August 28, 2020, and an addendum to this second amended complaint on December 18, 2020. Dkt. Nos. 19, 21 (collectively "Second Amended Complaint").

On January 29, 2021, this Court issued a Memorandum-Decision and Order, which ordered that "upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service on Defendants." Dkt. No. 22 at 19. On February 4, 2021, Plaintiff requested service of process on Defendants through the U.S. Marshals Service using form USM 285. Dkt. No. 29. Summons were issued as to Defendants on February 5, 2021. Dkt. Nos. 23, 23-1, 23-2, 23-3. A few days later, on February 11, 2021, the Marshals Service attempted to served process on Defendants via regular mail. <u>Id.</u>

A notice of appearance was filed by attorneys William J. Dreyer and Joshua R. Friedman on behalf of Defendants on March 29, 2021. Dkt. Nos. 25–26. That same day, March 29, 2021, Defendants' attorney Joshua R. Friedman sent a request to the Magistrate Judge asking for a "pre-answer conference" arguing that it "would be beneficial to the parties and the Court by clarifying the scope of Plaintiff's remaining allegations against Defendants." Dkt. No. 27. Defendants' attorney Friedman stated further: "Defendants submit that a conference may also provide an opportunity to further narrow the issues before the Court prior to the filing of Defendants['] anticipated responsive filing." <u>Id.</u>

On March 30, 2021, the Court entered into the Docket a letter dated March 29, 2021, from the Marshals Service; this letter indicated that service of process upon Defendants had not been effected, because "Acknowledgment of Receipt of Summons and Complaint by Mail, was NOT returned to this office within thirty days of initial mailing by the defendant named on the attached USM 285. Therefore, the U.S. Marshals Service, NDNY, is returning the USM 285 unexecuted." Dkt. No. 29.

On April 6, 2021, the Magistrate Judge denied Defendants' request for a conference, but the Court "extend[ed] the time for Defendants to file a response to the Second Amended Complaint to May 7, 2021." Dkt. No. 30. Next, on May 6, 2021, the Magistrate rescheduled the FRCP Rule 16 Initial Conference for May 27, 2021. Dkt. No. 31. That same day, May 6, 2021, Defendants' attorney Friedman filed a "Letter Motion" stating that "[t]o date, none of the Defendants have been duly served with process . . . ." Dkt. No. 32 at 1.

On May 10, 2021, Plaintiff filed a "Letter Motion" indicating that he had "relied upon the U.S. Marshals to properly serve the Defendants" and asserting that "the attorney for the Defendants could have . . . filed a proper Motion to Dismiss as required by Local Rule 7.1 Motion Practice . . . ." Dkt. No. 37 at 1. Plaintiff requested "an extension to properly serve the Defendants with the Complaint" stating that "[a]n additional 10 days will be sufficient." Id. at 2. Plaintiff indicated that he would "properly and personally serve the Defendants the Complaint." Id. at 1. On May 10, 2021, Plaintiff also filed affidavits with the Court attesting that he had served summons on one Kyle McMahon at "Dreyer Boyajin," located at 75 Columbia Street in Albany, New York, on May 10, 2021. Dkt. Nos. 33–36. Attorney Friedman previously indicated that Dreyer Boyajian LLP had been retained by Defendants and Friedman's letterhead specified that the law firm's address was 75 Columbia Street in Albany, New York. Dkt. No. 27. On May

25, 2021, the Magistrate Judge issued a Text Order stating: "Based upon the filing of proof of service by Plaintiff, the deadline in which Defendants are to respond to the Second Amended Complaint is extended to June 15, 2021." Dkt. No. 38.

The next month, on June 9, 2021, attorney Lauren S. Owens issued a notice of appearance on behalf of Defendants. Dkt. No. 39. That same day, June 9, 2021, Attorney Owens filed a "Letter Motion" "request[ing] a thirty (30) day extension to respond to plaintiff's Second Amended Complaint." Dkt. No. 40. Attorney Owens also claimed that "defendants have not consented to personal jurisdiction in this matter . . . ." Id.

Over a month later, on July 15, 2021, Defendants filed the present Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process. Def.s' Mot. at 1. In addition, Defendants' Motion asked the Court to declare Plaintiff a vexatious litigant and requested that the Court enjoin Plaintiff from bringing additional federal litigation against Defendants. Id. at 1. Plaintiff responded to Defendants' Motion on July 27, 2021. Pl.'s Resp. On July 27, 2021, Plaintiff also asked the Court for further assistance with serving process upon Defendants. Dkt. No. 46. Defendants filed a reply to Plaintiff on August 12, 2021. Def.s' Reply.

## III.   LEGAL STANDARD

### A.  Rule 12(b)(2) and 12(b)(5) Motions to Dismiss

Under FRCP 12(b) "a party may assert the following defenses by motion: . . . (2) lack of personal jurisdiction; . . . [and] (5) insufficient service of process . . . ." Fed. R. Civ. P. 12(b)(2), (5). Further, under Rule 12(b) "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). After a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is made, the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litigation,

334 F.3d 204, 206 (2d Cir. 2003). Likewise, following a Rule 12(b)(5) motion to dismiss, "the plaintiff bears the burden of establishing that service was sufficient." Khan v. Khan, 360 Fed.Appx. 202, 203 (2d Cir. 2010). In assessing Defendants' "motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(5), the court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether it has jurisdiction and service was proper." Werst v. Sarar USA Inc., No. 17-CV-2181, 2018 WL 1399323, at *2 (S.D.N.Y. Mar. 16, 2018).

## IV. DISCUSSION

Plaintiff is pro se in this case and the Court is required to "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). The main issues here are Defendants' motion to dismiss under 12(b)(2) and 12(b)(5), as well as Defendants' request to declare Plaintiff a vexatious litigant and to enjoin him from further litigation against Defendants.

### A. Rule 12(b)(2) and Rule 12(b)(5) Defenses

Rule 12(b)(2) and Rule 12(b)(5) are separate defenses, even if they are related. See Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1095 (2d Cir. 1990) ("As one would reasonably infer from the fact that the Rules list separately the defenses of lack of personal jurisdiction and insufficiency of service of process, these two defenses, while often related, are not identical."). Rule 12(b)(2) concerns lack of personal jurisdiction, and "[q]uestions of personal jurisdiction go to 'whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant . . . .'" Id. at 1095 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1351, at 560 (1969)). In contrast, Rule 12(b)(5) deals with insufficient service of process and these "questions of sufficiency concern 'the manner in which service has been made and not … the court's power to

5

adjudicate defendant's rights and liabilities . . . .'" <u>Santos</u>, 902 F.2d at 1095 (quoting Wright &
Miller, § 1353, at 578–79).

Based on Defendants' Motion, Defendants' Reply, and the record in this case,
Defendants' 12(b)(2) defense relies on their 12(b)(5) defense. Indeed, Defendants' Motion
appears to admit as much by conflating 12(b)(2) with 12(b)(5): "Although lack of personal
jurisdiction and insufficient service of process provide two independent bases for dismissal, they
overlap in certain instances," Def.s' Mem. of L. at 2. Defendants do not argue that they lack
sufficient contact with the forum to give the Court the right to exercise judicial power over
Defendants. Instead, Defendants argue they were not properly served by the U.S. Marshals on
behalf of Plaintiff and that Plaintiff's attempt to cure this lack of service by serving Defendants'
attorneys at their law office was improper service because these attorneys were not Defendants'
agents. <u>Id.</u> at 5. Because Defendants' 12(b)(2) defense is based on their 12(b)(5) defense, if
Defendants' 12(b)(5) defense for insufficient service of process fails, their 12(b)(2) defense also
fails. <u>See</u> <u>Santos</u>, 902 F.2d at 1095 ("A defense of 'absence of an agency relationship between
the recipient of process and defendant,' is properly characterized as a defense of insufficiency of
service of process, and is not necessarily revealed by an assertion simply that the court lacks the
power to adjudicate the rights and liabilities of the defendant." (citations omitted) (quoting
Wright & Miller, § 1353, at 579)); <u>cf.</u> <u>Harris Corp. v. Nat'l Iranian Radio & Television</u>, 691 F.2d
1344, 1353 n.18 (11th Cir. 1982) ("objection to service of process does not preserve the issue of
personal jurisdiction"; "challenges to service remain, as always, distinct from challenges to
jurisdiction over the person").

**B.  Rule 4 Service of Process**

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). "The notice must be of such nature as to reasonably convey the required information, and it must afford a reasonable time for those interested to make their appearance." Id. at 315 (citations omitted). Therefore, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 194 (1987). "But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met[,] the constitutional requirements are satisfied." Mullane, U.S. at 314–15.

FRCP 4(e) sets forth the requirements for serving an individual in the United States: "Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ.

P. 4(e)(1)–(2). Under Rule 4(e)(1) Plaintiff could also serve process following the requirements

of New York State law under New York Civil Practice Law & Rules (CPLR) § 308.[1]

     Green Acre Farms is a sole proprietorship owned by Eileen Yandik. Declaration of

William Yandik at 1. "[A] sole proprietorship has no legal existence apart from its owner." U.S.

v. Fridman, 974 F.3d 163, 180 (2d Cir. 2020) (quoting U.S. v. Fox, 721 F.2d 32, 36 (2d Cir.

1983)). Courts are split over whether FRCP 4(e) or FRCP 4(h), which deals with service of

process on "a domestic or foreign corporation, or a partnership or other unincorporated

association that is subject to suit under a common name," governs service of process on a sole

---

[1] CPLR § 308 states: "Personal service upon a natural person shall be made by any of the following methods: 1. by delivering the summons within the state to the person to be served; or 2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service . . .; or 3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . .; 4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing, . . . ; 5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section. 6. For purposes of this section, 'actual place of business' shall include any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." CPLR § 308(1)–(6).

proprietorship. Fed. R. Civ. P. 4(h)(1) ("Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: (1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . ."); compare Barnard v. Foot Traffic Shoes, No. C-16-07253, 2018 WL 2063318, *2 at (N.D. Cal. May 3, 2018) (finding that FRCP 4(h)(1) "govern[ed] service of process on corporations, partnerships, and other unincorporated associations subject to suit; [but] a sole proprietorship . . . is not such an entity" and asserting that "service of process on a sole proprietorship 'must accord with the standards for service on individuals'") (quoting Bd. Of Trs. Of Laborers Health & Welfare Tr. Fund for N. Cal. v. Perez, No. C-10-2002, 2011 WL 6151506, at *4 (N.D. Cal. Nov. 7, 2011), with Vax-D Med. Techs., LLC v. Texas Spine Med. Cent., 485 F.3d 593, 596 (11th Cir. 2007) ("proper service upon [defendant sole proprietorship] pursuant to Fed. R. Civ. P. 4(h) also amounted to proper service upon [defendant-owner of the sole proprietorship], securing personal jurisdiction over him and rendering him liable for any judgment entered against [defendant sole proprietorship]"). The Court does not rule on this matter today. Regardless, because FRCP 4(h)(1) allows for service "in the manner prescribed by Rule 4(e)(1) for serving an individual," the Court continues its FRCP 4(e)(1) analysis. Fed. R. Civ. P. 4(h)(1)(A).[2]

---

[2] Under FRCP 4(e)(1), Plaintiff could serve process on Green Acre Farms by following the requirements of CPLR § 308(2). This is because under New York State law "CPLR 308(2) is the

In addition to these requirements, service must take place within a specified time period, as set out both by the Local Rules and the FRCP. Local Rule 4.1(b) calls for "service of process upon all defendants within sixty (60) days of the filing of the complaint." Local Rule 4.1(b). Defendants argue that "Local Rule 4.1 *requires* that service of process be completed within 60 days of the filing of the complaint . . . ." Def.s' Mem. of L. at 6 (emphasis added). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Pensionsversicherungsanstalt v. Greenblatt, 556 Fed. Appx. 23, 25 (2d Cir. 2014) (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001)). Therefore, the Court has discretion in determining whether service of process should be effectuated within 60 days of the filing of the complaint, as specified in the Local Rules.

Indeed, the Local Rules themselves demonstrate the Court's discretion: "In no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4." Under the FRCP, a longer time limit for service is specified: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified period." Fed. R. Civ. P. 4(m). However, this time limit may be extended "if the plaintiff shows good cause for the failure" in which case "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Moreover, FRCP 4(m) grants the Court broad discretion because "Rule 4(m) . . . permits a district court to enlarge the time for service 'even if there is no good cause shown.'" Henderson v. U.S., 517 U.S. 654, 658 n.5 (1996) (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment).

---

governing section for service of process upon a sole proprietorship." Steele v. Hempstead Pub Taxi, 305 A.D.2d 401, 401 (N.Y. App. Div. 2003).

Thus, the Court has discretion in determining whether service of process should be executed within 60 days of the filing of the complaint as specified in the Local Rules, or within 90 days of the filing of the complaint as specified in the FRCP. Moreover, this Court can extend the time limit for service of process further if a litigant shows good cause, or even if a litigant does not show good cause.

### C.  Service of Process Time Limits for in forma pauperis Litigants

Defendants' Motion claims that "[o]ver 300 days have elapsed since plaintiff filed his second Amended Complaint and to date, defendants have not been properly served with process." Def.s' Mem. of L. at 6. In this case, Plaintiff is an in forma pauperis litigant under 28 U.S.C. § 1915, as granted on May 14, 2019, and Defendants' argument indicates a misunderstanding of the standards applied to an in forma pauperis litigant. Dkt. No. 5.

The service of process time limits for in forma pauperis litigants are interpreted more liberally, because in forma pauperis litigants "should not be punished for any delay in the issuance of process if he [or she] filed the complaint in a timely manner, with a request for leave to proceed [in forma pauperis]." Pendleton v. Goord, 849 F.Supp.2d 324, 330 (E.D.N.Y. 2012); see also Kavazanjian v. Rice, No. 03-CV-1923, 2005 WL 1377946, at *2 (E.D.N.Y. Jun. 6, 2005) ("[T]he Court believes that the time to effect service should be tolled while an *in forma pauperis* motion is pending—at least where, as here, the motion is granted." (emphasis in original)). This means that "an *in forma pauperis* plaintiff should not be penalized for a delay caused by the court's consideration of his complaint." Pendleton, 849 F.Supp.2d at 330 (emphasis in original). Therefore, for an in forma pauperis litigant, the time to serve process does not begin until the date that the summons is issued. See Sheffield v. Mcginnes, 21-CV-7120, 2021 WL 4948933, at *1 (S.D.N.Y. Sept. 30, 2021) ("Plaintiff is proceeding IFP [in forma

pauperis] and could not have served the summons and complaint until after the Court reviewed the complaint and ordered that a summons be issued. The Court therefore extends the time to serve until 90 days after the date the summons is issued.").

In this case, Plaintiff filed his Second Amended Complaint on August 28, 2020, with an addendum added on December 18, 2020, as requested by the Court on November 16, 2020. Dkt. Nos. 19–21. However, the Court did not order the Plaintiff to provide the documents necessary for service of process through the Marshals Service until January 29, 2021. Dkt. No. 22 at 19. Moreover, summons were not issued as to Defendants until February 5, 2021. Dkt. Nos. 23, 23-1, 23-2, 23-3. Thus, the delay between Plaintiff's filing of his Second Amended Complaint on August 28, 2020, the Court's order for service of process through the U.S. Marshals on January 29, 2021, and the issuance of the summons as to Defendants on February 5, 2021, was caused by the Court and not Plaintiff himself. As such, Plaintiff, proceeding in forma pauperis, will not be penalized for this delay in issuing the service of process.

### D.  Good Cause for Failure to Serve for in forma pauperis Litigants

Defendants' Motion also argues that "plaintiff cannot show good cause for the failure to serve defendants within the required time limits." Def.s' Mem. of L. at 6. As Defendants assert: "Despite being on notice since at least March 29, 2021, that the Summons was returned unexecuted as to all defendants, plaintiff failed to request that the Marshals Service make further attempts at service or otherwise notify the Court that he required additional time to effectuate service." Id. These statements also demonstrate an erroneous interpretation of service of process on behalf of in forma pauperis litigants.

Under 28 U.S.C. § 1915(d) "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." In light of 28 U.S.C. § 1915, "[f]or plaintiffs proceeding *in*

*forma pauperis* . . . the Marshal's Office—not the plaintiff—is primarily responsible for

effecting service." Kavazanjian, 2005 WL 1377946, at *2 (emphasis in original); see also Walker

v. Schult, 717 F.3d 119, 123 n.6 (2d Cir. 2013) ("Generally, a *pro se* litigant proceeding *in forma*

*pauperis* is entitled to rely on the U.S. Marshals Service to effect service." (emphasis in

original)). Because in forma pauperis litigants are reliant on the Marshals Service, "numerous

courts . . . have held that good cause under Rule 4(m) is automatically established when the

Marshal's Office has failed to effect service so long as the plaintiff has provided the information

necessary to identify the defendants." Kavazanjian, 2005 WL 1377946, at *2; cf. Ruddock v.

Reno, 104 Fed.Appx. 204, 207 (2d Cir. 2004) (asserting in the case of "a *pro se* prisoner-litigant

proceeding *in forma pauperis*" that "[s]o long as such a prisoner provides the information

necessary to identify the defendant, courts have uniformly held that the Marshals' failure to

effect service automatically constitutes good cause within the meaning of Rule 4(m)" (emphasis

in original)).

　　　　Plaintiff argues that "he has good cause for failure to serve defendants," Pl.'s Resp. at 3,

because "Plaintiff assumed the Compliant would be delivered to the Defendants by the Court, via

the U.S. Marshals . . . ." Id. After the Court ordered Plaintiff to provide the documents necessary

for service of process through the Marshals Service on January 29, 2021, Plaintiff promptly

complied with this order by requesting service of process through the Marshals Service on

February 4, 2021. Dkt. Nos. 22 at 19, 29. The Marshals Service failed to effectuate service on

Defendants, as indicated by the Marshals' letter entered into the Court's docket on March 30,

2021. Dkt. No. 29. Plaintiff is an in forma pauperis litigant and, therefore, the Marshals Service

is responsible for service of process on behalf of Plaintiff. Because the Marshals failed to serve

process on Defendants, Plaintiff in this case has established good cause under FRCP 4(m) for failure to effect service of process.

Defendants argue that Plaintiff has not complied with the Second Circuit case <u>Meilleur v. Strong</u>, Def.s' Mem. of L. at 3, which stated: "If a plaintiff proceeding [in forma pauperis] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effectuate service and request a further extension of time for them to do so." <u>Meilleur v. Strong</u>, 682 F.3d 56, 63 (2012). However, the Court's holding in this case is in line with the decision in <u>Meilleur</u>.

The court in <u>Meilleur</u> emphasized that the previous Second Circuit cases of <u>Romandette v. Weetabix Co.</u>, 807 F.2d 309 (2d Cir. 1986) and <u>Nagy v. Dwyer</u>, 507 F.3d 161 (2d Cir. 2007) (per curiam), which both dealt with in forma pauperis litigants, "leave a wide range of discretion to the district courts." <u>Id.</u> at 62-63. In <u>Meilleur</u>, when the plaintiff missed a November 11, 2010, deadline to deliver service of process within the 120-day requirement of FRCP 4(m) at that time, the district court granted her an extension sua sponte for delivery through December 30, 2010. <u>See id.</u> at 59. The plaintiff requested a further extension on November 23, 2010, but the district court denied this request, noting that she had over a month to deliver service of process and indicating that her case would be dismissed if she failed to meet this deadline. <u>See id.</u> at 59. While the plaintiff had given the required documents to the U.S. Marshals on December 2, 2010, she did not inform the district court. <u>See id.</u> at 59–60. The district court dismissed her case on January 10, 2011, but plaintiff "did not offer any kind of response to the court's January 10 order until May 10, 2011," a full four months after her case had been dismissed. <u>Id.</u> at 60. In light of these facts, the Second Circuit found that "[t]he district court reasonably could have expected

[plaintiff] to raise the issue of pending service either prior to, or immediately following, its order of dismissal." <u>Id.</u> at 63.

Moreover, <u>Meilleur</u> was issued in 2012, but in 2015 the time for service required under FRCP 4(m) was shortened from 120 days to 90 days, and in light of this reduced time frame the FRCP Advisory Committee recommended granting liberal extensions for service of process to in forma pauperis litigants: "Shortening the presumptive time for service will increase the frequency of occasions to extend time. More time may be needed, for example, when . . . a marshal is to make service in an in forma pauperis action." Fed. R. Civ. P. 4(m) advisory committee's note to 2015 amendment.

Plaintiff in this case stands in stark contrast to the plaintiff in <u>Meilleur</u>. Unlike the plaintiff in <u>Meilleur</u>, who did not seek to make arrangements with the U.S. Marshals until after the then-required 120-day deadline to deliver service of process had already passed, Plaintiff in this case complied punctually by requesting delivery of service of process through the Marshals Service less than a week after the Court ordered Plaintiff to do so. Dkt. Nos. 22, 29. In <u>Meilleur</u> the plaintiff was given notice that her case was facing dismissal at the end of December 2010, but she failed to communicate with the district court until four months after her case had been dismissed. <u>Id.</u> at 60. In contrast to the <u>Meilleur</u> plaintiff's dilatory attitude, Plaintiff in the case at hand promptly requested an extension with the Court to deliver service of process only a few days after the FRCP 4(m) 90-day window had elapsed and informed the Court that he was trying to cure this issue as quickly as possible. Dkt. No. 37. Moreover, extending the time limit for Plaintiff to effect service upon Defendants through the Marshals Service under FRCP 4(m) clearly follows the recommendations of the FRCP Advisory Committee for in forma pauperis

litigants following the 2015 changes to the FRCP. <u>See</u> Fed. R. Civ. P. 4(m) advisory committee's note to 2015 amendment.

Thus, pursuant to FRCP 4(m) the Court grants Plaintiff an extension of time to effectuate proper service upon Defendants. Plaintiff may effectuate service by again submitting the documents required for service of process to the Court's Clerk, who shall issue summonses and forward them, along with copies of the Second Amended Complaint, to the United States Marshal for service on Defendants.

Defendants argue that Plaintiff improperly served the summons and complaint to the law office of Defendants' attorneys: "[P]laintiff's purported service on defendants by delivering the Summons and Second Amended Complaint to defendants' law firm on May 10, 2021[,] does not constitute proper service. Dreyer Boyajian LLP is not a registered agent of the defendants, nor did defendants intend to appoint Dreyer Boyajian LLP as their agents for service of process." Def.s' Mem. of L. at 5. Because the Court finds that Plaintiff has shown good cause under FRCP 4(m), Defendants' objection to Plaintiff's second attempt to serve process is moot, and at this time the Court does not rule on the validity of that second attempt at service of process.

### E.  Requesting Alternative Service of Process Under CPLR § 308(5)

As noted directly above, Defendants argue that because their law firm is not a registered agent of Defendants, service of process cannot be effectuated on Defendants' attorneys. Def.s' Mem. of L. at 5. However, FRCP 4(e)(1) states that process can be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[,]" Fed. R. Civ. P. 4(e)(1), and New York's CPLR § 308(5) provides more extensive options for service of process than FRCP 4(e). CPLR § 308(5) states: "Personal service upon a natural person shall be made by any of the

following methods: . . . 5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." CPLR § 308(5).

Under CPLR § 308(5), courts have substantial discretion in allowing for alternative methods of service of process upon a showing of impracticality. See Kelly v. Lewis, 220 A.D.2d 485, 485 (N.Y. App. Div. 1995) ("The court has discretion to direct alternative service of process pursuant to CPLR 308(5) when it has determined that the methods set forth in CPLR 308(1), (2), and (4) are 'impracticable.' The standard for impracticability under CPLR 308(5) is different from the more stringent one of 'due diligence' under CPLR 308(4). That is, to meet the standard on impracticability does not require satisfying due diligence, or even showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken.").

Even where plaintiffs have imperfectly served defendants, courts have been willing to find impracticability under CPLR § 308(5) and to direct substitute service, particularly when defendants have participated in the litigation, see Bozza v. Love, No. 15 Civ. 3271, 2015 WL 4039849, at *1–2 (S.D.N.Y. Jul. 1, 2015) (granting plaintiff's request to deliver alternative service under FRCP 4(e)(1) and CPLR § 308(5) by allowing plaintiff to "effect service on Defendant by serving the Summons and Complaint on Dongell Lawrence Finney LLP ('Dongell Lawrence'), which is counsel of record for Defendant in an unrelated matter"); Tishman v. The Associated Press, No. 05-CV-4278, 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006) (granting plaintiffs' request for substitute service via email because "plaintiffs ha[d] attempted 'nail and mail' service but [were] unable to confirm whether defendant was in fact successfully served" and because "defendant, despite being in communication with both the court and plaintiffs through his attorneys, refuses to disclose his current residence or place of business").

The Second Circuit has stated: "Gradually we have come to permit and approve the giving of notice under a substitute system limited by the requirements of the due process clause. 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." S.E.C. v. Tome, 833 F.2d 1086, 1093 (2d Cir.) (emphasis added) (quoting Mullane, 339 U.S. at 314). As the Second Circuit explained: "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of adequacy of *constructive notice*." S.E.C. v. Tome, 833 F.2d at 1093 (emphasis in original). Likewise, here the Court is not dealing with the question of adequacy of constructive notice.

In United Specialty Ins. Co. v. Table Run Ests. Inc., the Southern District of New York found that even when a plaintiff was unsuccessful in its attempts to serve a defendant, if the defendant had actual notice of the claims against him, then substitute service could be granted under CPLR § 308(5), and the court ordered the defendant's attorneys to accept service for their client, even though the plaintiff had not served process within the FRCP 4(m) 90-day window. United Specialty Ins. Co. v. Table Run Ests. Inc., 18-CV-5848, 2019 WL 2327699, *5 (S.D.N.Y. May 30, 2019) ("The Court therefore grants [plaintiff's] motion to permit a substitute method of service [under CPLR § 308(5)] and orders that [defendant]'s counsel of record in this action accept service on his behalf. And although more than ninety days have elapsed since [plaintiff] filed this case, the Court concludes in its discretion that an extension of time to effect service on [defendant] is warranted in light of [plaintiff's] diligent efforts to effect service and [defendant's] actual knowledge of the claims against him.").

Similarly, in this case Defendants have been "in communication with both the court and the [Plaintiff] through [their] attorneys . . . ." Id. at *4 (quoting Tishman, 2006 WL 288369, at *1). In particular, on March 29, 2021, on the same day that Defendants' attorneys issued their notices of appearance, Dkt. Nos. 25–26, Defendants, of their own accord, asked for a "pre-answer conference" to "clarify the scope of Plaintiff's remaining allegations against Defendants" and "submit[ted] that a conference may also provide an opportunity to further narrow the issues before the Court prior to filing of Defendants['] anticipated responsive filing," Dkt. No. 27.

Based on these facts, Defendants have actual notice of the case pending against them. If the U.S. Marshals are yet again unable to effectuate service of process on Defendants, Plaintiff is permitted to enter a motion with the Court under FRCP 4(e)(1) and CPLR § 308(5) requesting substitute service of process on Defendants through an alternative means of delivery due to impracticability.

### F.  Motion to Declare Plaintiff a Vexatious Litigant and to Enjoin Plaintiff from Filing Further Federal Lawsuits against Defendants

"A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985). District courts have the authority to enjoin parties from vexatious litigation. See In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984) ("The district court in the present case thus had the power and obligation to protect the public and the efficient administration of justice from Martin-Trigona's litigious propensities. Injunctive relief was fully appropriate, since other sanctions would not be effective."). The Second Circuit considers "whether or not to restrict a litigant's future access to the courts" based on:

> (1) [T]he litigant's history of litigation and in particular whether it entailed
> vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing
> the litigation, e.g., does the litigant have an objective good faith expectation of
> prevailing?, (3) whether the litigant is represented by counsel; (4) whether the

19

litigant has caused needless expense to other parties or has posed an unnecessary
burden on the courts and their personnel; and (5) whether other sanctions would be
adequate to protect the courts and other parties. Ultimately, the question the court
must answer is whether a litigant who has a history of vexatious litigation is likely
to continue to abuse the judicial process and harass other parties.

Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). Defendants cite to Safir in their

Memorandum of Law. Def.s' Mem. of L. at 8.

However, the facts in this case are substantially different from prior cases involving

vexatious litigation. With regard to the first factor—assessing a plaintiff's history of litigation—

in Safir "the instant suit [wa]s the eleventh federal court action that Safir or his defunct company

ha[d] filed against the defendants . . . ." Safir, 792 F.2d at 20. In contrast, Plaintiff only has one

case pending against Defendants, and Defendants can only cite to one other, unrelated lawsuit

that Plaintiff has brought against a different defendant elsewhere. Def.s' Mem. of L. at 8–9.

With respect to the second prong, the facts of this case again differ substantially from

Safir. In that case, "Safir brought involuntary bankruptcy proceedings against four of the

defendants. That action was predicated on the untenable theory that because Safir was about to

win prodigious judgments from the defendants, they would be unable to satisfy the claims and be

forced into bankruptcy. The bankruptcy court found Safir's petition to be a clear abuse of the

judicial process, and assessed costs and attorneys' fees against Safir. To date, Safir has not paid

those costs and fees." Safir, 792 F.2d at 25. There is no indication that the motivation in this case

rises to the level of bad faith seen in Safir—no one, for instance, is bringing involuntary

bankruptcy proceedings.

With respect to the third factor, Plaintiff is pro se, but this factor alone cannot be

dispositive—that would improperly impugn the motives of all pro se litigants.

Regarding the fourth factor of the undue burden and costs, once again the case at hand is dissimilar from prior cases enjoining vexatious litigants, such as In re Martin-Trigona, which stated: "To those who follow the business of the courts, the appellant needs no introduction. He is the source of literally hundreds of lawsuits, motions, and miscellaneous pleadings, all but a small fraction of which lack any merit whatsoever." 737 F.2d at 1256. Once again, there is no indication that Plaintiff has wasted the time and resources of the Court and others to such an extent.

Finally, with regard to the final prong, in Safir the Second Circuit found that "Safir's failure to pay costs and fees already assessed against him indicates that other types of sanctions would be unavailing." Safir, 792 F.2d at 25. In this case, there is no sign that Plaintiff has failed to pay legal costs and fees assessed to him.

Because the facts of this case do not meet the requirements of the test announced by the Second Circuit in Safir, Defendants' motion to declare Plaintiff a vexatious litigant is denied, and Plaintiff is permitted to continue this litigation.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 43) is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion to declare Plaintiff a vexatious litigant and to enjoin him from filing further federal lawsuits against Defendants (Dkt. No. 43) is **DENIED**; and it is further

**ORDERED**, that the Clerk shall use Plaintiff's proposed United States Marshal forms, Dkt. Nos. 46-1, 46-2, 46-3, 46-4, to issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service on Defendants; and it is further

**ORDERED**, that if the United States Marshal fails to serve process on Defendants within **sixty (60) days** of this Memorandum-Decision and Order, Plaintiff is permitted to enter a motion with the Court under FRCP 4(e)(1) and CPLR § 308(5) requesting substitute service of process on Defendants through an alternative means, describing Plaintiff's earlier efforts to effect service of process on Defendants, and indicating why these earlier efforts were impracticable; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     March 31, 2022
           Albany, New York

LAWRENCE E. KAHN
United States District Judge