UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMIR M. HAMZA,

                Plaintiff,

-against-                                    1:19-CV-0447 (LEK/DJS)

EILEEN YANDIK, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Amir Hamza commenced this action against Eileen Yandik, William Yandik, Stephen Yandik, and Green Acres Farm (collectively, "Defendants") on April 15, 2019. Dkt. No. 1 ("Complaint"). The following month, the Court granted Plaintiff's application to proceed in forma pauperis ("IFP"). Dkt. No. 5. Plaintiff filed a second amended complaint on August 28, 2020, and an addendum to this second amended complaint on December 18, 2020. Dkt. Nos. 19, 21 (collectively, "Second Amended Complaint"). On January 29, 2021, the Court determined that Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims against Green Acres Farm and breach of contract claims against all Defendants survived sua sponte review pursuant to 28 U.S.C. 1915(e)(2), and thus required a response. Dkt. No. 22 at 11–12, 19 ("January 2021 Order"). Now before the Court are the following motions: (1) Plaintiff's motion for an order requiring Defendants to pay Plaintiff's costs for serving the Second Amended Complaint, Dkt. No. 57; (2) Plaintiff's second motion for a default judgment against Defendants, Dkt. No. 75; (3) Plaintiff's request to withdraw his second motion for default judgment; (4) Defendants' cross-motion to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 4(m) and 41(b), Dkt. No. 64 ("Defendants' Cross-Motion to

Dismiss"); and (5) a motion from Defendants' counsel seeking leave to withdraw from their representation, Dkt No. 68. For the reasons set forth below, the Court grants Defendants' Cross-Motion to Dismiss pursuant to Rule 4(m) and directs the Clerk of the Court to enter judgment. The Court denies all other pending motions as moot.

## II.     PROCEDURAL HISTORY

### A. Factual Allegations

The Court assumes familiarity with Plaintiff's factual allegations, which the Court summarized in the January 2021 Order. See Jan. 2021 Order at 2–4.

### B. Procedural History

The Court also assumes familiarity with Plaintiff's attempts to serve Defendants prior to March 2022, which the Court detailed in an order dated March 31, 2022. Dkt. No. 49 ("March 2022 Order") at 2–4.

In the March 2022 Order, the Court denied Defendants' motion to dismiss the Second Amended Complaint for insufficient service of process pursuant to Rule 12(b)(5), id. at 21, and granted Plaintiff an extension of time to effectuate proper service upon Defendants pursuant to Rule 4(m), id. at 16 (finding that "Plaintiff has shown good cause" for an extension). Given that "Defendants ha[d] actual notice of the case pending against them," id. at 19, the Court also ordered that:

> [I]f the United States Marshal fails to serve process on Defendants within **sixty (60) days** of [the March 2022] Order, Plaintiff is permitted to enter a motion with the Court under FRCP 4(e)(1) and CPLR § 308(5) requesting substitute service of process on Defendants through an alternative means, describing Plaintiff's earlier efforts to effect service of process on Defendants, and indicating why these earlier efforts were impracticable[.]

2

Id. at 22. Shortly after the Court issued the March 2022 Order, the Clerk of the Court issued summons as to all Defendants. Dkt. No. 50.

After the Clerk issued the summons, Plaintiff did not file anything on the docket for nearly five months. Therefore, on August 26, 2022, the Honorable Daniel J. Stewart directed Plaintiff "to advise [the Court] as to the status of service upon the Defendants in this matter by September 9, 2022." Dkt. No. 51. Plaintiff did not file a status report by this deadline. Dkt. No. 52. Then, after nearly three more months had passed without any communication from Plaintiff, the Court issued an order on December 2, 2022, granting Plaintiff a final fourteen days "to submit a filing with the Court showing good cause for failure to serve process on Defendants." Id. The Court added that "[i]f Plaintiff does not submit a filing by December 16, 2022, showing good cause for the failure to effect service, Plaintiff is advised that the Court shall dismiss this action without prejudice pursuant to Rule 4(m)." Id. (citing Fed. R. Civ. P. 4(m)).

Three days after the final deadline to show good cause for the failure to effect service, Plaintiff filed a letter with the Court explaining (1) why he failed to effect service within the time allotted and (2) why an alternative means of service is necessary. Dkt. No. 53 at 1.

Then, on December 27, 2022, Plaintiff filed a motion for an order requiring Defendants to pay Plaintiff's costs for serving the Second Amended Complaint, Dkt. No. 57, and a motion for a default judgment against Defendants, Dkt. No. 58. Plaintiff then filed four affidavits from the Columbia County Sheriff's Office on January 17, 2023, representing that the Defendants were personally served with a summons and complaint between December 20, 2022, and December 29, 2022. Dkt. Nos. 59–63.

In their opposition to both motions, Defendants filed a timely response to Plaintiff's motions in which they argue that dismissal is warranted due to Plaintiff's failures to comply with

3

this Court's deadlines and orders. See Dkt. No. 64-1 at 3–5. Defendant also moves for dismissal on the basis that Plaintiff had still failed to file timely and proper service. See id. at 5–6. Finally, Defendants argued that Plaintiff's motions for default judgment and payment of fees should be denied for lack of merit. See id. at 7. Plaintiff then filed a timely reply to Defendants' response and cross-motion. Dkt. No. 67.

Separately, and shortly thereafter, Defendants' counsel filed a motion to withdraw. Dkt. No. 68. The Court has not yet ruled on this motion.

On May 25, 2023, this Court issued a Text Order denying Plaintiff's motion for default judgment but deferring any ruling on the remaining outstanding motions. Dkt. No. 70. Specifically, the Court denied Plaintiff's motion for default judgment on the basis that Plaintiff had not yet secured entry of default, as required by Local Rules 55.1 and 55.2(b). See id. Plaintiff then sought and received entry of default on May 31, 2023. See Dkt. No. 73. The next day, however, the Court instructed the Clerk to vacate the entry of default pending resolution of the outstanding motions, noting that the entry was not permitted because the question of proper service had not yet been resolved. See Dkt. No. 74. The Court also instructed Plaintiff not to request entry of default or file any motion for default judgment until the Court had done so. See id. However, prior to receiving this Order, Plaintiff had already mailed a second motion for default judgment to the Court. See Dkt. No. 75. Upon receipt of the Court's Order vacating the entry of default, Plaintiff filed a subsequent request to withdraw his second motion for default judgment. Dkt. No. 76.

### III.   LEGAL STANDARD

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice

4

against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id.

The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant. See AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000). "Good cause is 'generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.'" E. Refractories Co. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (quoting Nat'l Union Fire Ins. Co. v. Sun, No. 93-CV-7170, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994)). "District courts consider the diligence of plaintiff's efforts to effect proper service and any prejudice suffered by the defendant as a consequence of the delay." Id. "In particular, a court should look to whether 'the plaintiff was diligent in making reasonable efforts to effect service, including but not limited to whether plaintiff moved under FRCP 6(b)' for an extension of time in which to serve the defendant." AIG, 197 F.R.D. at 108 (quoting Gordon v. Hunt, 835 F.2d 452, 453 (2d Cir. 1987)).

If a plaintiff proceeding pro se and in forma pauperis chooses to rely on the United States Marshals Service to effective service on the defendants, "the Marshals' failure to effective service automatically constitutes good cause within the meaning of Rule 4(m)." Ruddock v. Reno, 104 F. App'x 204, 206–07 (2d Cir. 2004) (collecting cases); see also Jaiyeola v. Carrier Corp., 242 F.R.D. 190, 192 (N.D.N.Y. 2007) (Kahn, J.) ("[T]he Second Circuit has noted that a plaintiff's *in forma pauperis* status 'shift[s] responsibility for serving the complaint from [the plaintiff] to the Court.'" (alteration in original) (quoting Wright v. Lewis, 76 F.3d 57, 59 (2d Cir. 1996))). However, a plaintiff's reliance on the Marshals to effect service does not excuse a

plaintiff's responsibility to ensure that service has in fact been effectuated. See Meilleur v. Strong, 682 F.3d 56, 63 (2d Cir. 2012). For instance, if "it becomes apparent that the Marshals will not accomplish [service] by the Rule 4(m) or court-ordered deadline, [the plaintiff] must advise the district court that she is relying on the Marshals to effectuate service and request a further extension of time for them to do so." Id.

Even in the absence of good cause, a district court retains broad discretion "to enlarge the time for service." Henderson v. United States, 517 U.S. 654, 658 n.5 (1996) (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment); see also Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007) ("We hold that district courts have discretion to grant extensions even in the absence of good cause.").

> In determining whether a discretionary extension is appropriate in the absence of good cause, district courts generally consider: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service."

George v. Pro. Disposables Int'l, Inc., 221 F. Supp. 3d 428, 435 (S.D.N.Y. 2016) (quoting DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010)). "Where . . . good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," the Second Circuit "will not find an abuse of discretion . . . so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." Zapata, 502 F.3d at 197 (footnote omitted). In addition, "district courts may, in their discretion, deem it desirable in some cases to inquire as to *pro se* plaintiffs' compliance (or lack thereof) with their instructions before dismissing their actions." Meilleur, 682 F.3d at 63 n.6.

IV.     DISCUSSION

This Court previously credited Plaintiff for his diligence in attempting to effectuate service through the United States Marshals Service. See Mar. 2022 Order at 15. In fact, Plaintiff's diligence was one of the primary reasons this Court granted Plaintiff an additional sixty days to effectuate service on Defendants via the United States Marshals Service. Id. at 16, 22. Recognizing that the United States Marshals Service might fail to serve process on Defendants a second time, the Court also granted Plaintiff leave to enter a motion with the Court "requesting substitute service of process on Defendants through an alternative means" should the Marshals not effect service within those sixty days. Id.

However, after the Court issued the March 2022 Order, Plaintiff did not take any affirmative steps to properly serve Defendants *for nearly nine months*. After the United States Marshals Service again failed to serve Defendants in the additional sixty days allotted by the Court, Plaintiff did not request a further extension of time to effectuate service via the United States Marshals Service. Nor did Plaintiff enter a motion with the Court requesting the direction of substitute service of process on Defendants through an alternative means, as specifically permitted by the Court in the March 2023 Order. See Mar. 2023 Order at 22.

Given Plaintiff's silence throughout the summer, Judge Stewart ultimately directed Plaintiff on August 26, 2022, "to advise [the Court] as to the status of service upon the Defendants in this matter by September 9, 2022." Dkt. No. 51. Plaintiff did not comply with this order, and another two months passed without any update from Plaintiff regarding service on Defendants. Plaintiff's inaction finally spurred the Court to issue an ultimatum, instructing Plaintiff that his action was at risk for dismissal pursuant to Rule 4(m) if he did not "submit a filing with the Court showing good cause for failure to serve process on Defendants" within

fourteen days—i.e., December 16, 2022. Dkt. No. 52. Yet again, Plaintiff failed to comply with this deadline.

Plaintiff ultimately filed a status update three days after the third and final deadline set by the Court. See Dkt. No. 53; see also Ioele v. City of New York, No. 18-CV-10904, 2020 WL 1503506, at *3 n.2 (S.D.N.Y. Mar. 30, 2020) (noting that papers filed by non-incarcerated pro se litigants are deemed filed on the day on which the papers are received and file-stamped by the clerk of the district court (citing Fed. R. Civ. P. 3, 5(d)(2))); Nearhood v. Tops Mkts., Inc., 76 F. Supp. 2d 304, 305 (W.D.N.Y. 1999) ("It is well established . . . that when papers are mailed to the clerk's office, filing is complete only upon the clerk's receipt of those papers, and that filings reaching the clerk's office after a deadline are untimely, even if they are mailed before the deadline." (citing United States v. White, 980 F.2d 836, 845 (2d Cir. 1992)) (other citations omitted)). That failure to show good cause within the time allotted by the Court is enough to preclude a finding of good cause. But even if the Court were to credit the contents of Plaintiff's late filing, the Court would still find that Plaintiff has failed to show good cause for his failure to properly serve Defendants by December 16, 2022.

In his late filing, Plaintiff argues that good cause exists for his failure because "the Clerk did not attempt service on the Defendants as was previously ordered." Dkt. No. 53 at 1. The Court presumes that by referring to "the Clerk," Plaintiff is highlighting the United States Marshals Service's failure to effect service on Defendants within the additional sixty days allotted by the Court after the Clerk issued the summons. See id. Plaintiff is correct that the Marshals' failure to effect service within that additional sixty-day period would have automatically entitled Plaintiff to another extension to properly serve Defendants. See Ruddock, 104 F. App'x at 206–07. Yet Plaintiff is wrong to suggest that the Marshals' failure to serve the

Second Amended Complaint during those sixty days entitled Plaintiff to an indefinite extension of time to properly serve Defendants without Plaintiff ever having to take any further steps to ensure that service had in fact occurred. See Meilleur, 682 F.3d at 63 (stating that if "it becomes apparent that the Marshals will not accomplish [service] by the Rule 4(m) or court-ordered deadline, [the plaintiff] must advise the district court that she is relying on the Marshals to effectuate service and request a further extension of time for them to do so").

To date, Plaintiff has not provided cognizable reasons to the Court explaining why—in the nearly seven months following the expiration of the sixty-day deadline for the United States Marshals Service to effectuate service—Plaintiff (1) never asked for further extensions of time to effectuate service given the Marshals' failure, (2) never moved the Court to direct substitute service of process on Defendants through an alternative means, and (3) never provided any other meaningful update to the Court about the status of service on Defendants in this case. These actions would have required little effort on Plaintiff's part—particularly given that the Court has generally excused him, as a pro se litigant, from complying with the local rules. See, e.g., Jan. 2021 Order at 2 (recognizing that "Plaintiff's Second Amended Complaint is not a complete pleading" and resorting to factual allegations from earlier Second Amended Complaints to assess whether Plaintiff stated claims upon which relief may be granted). Plaintiff does state that he faced certain obstacles, including "the health of [his] family members, numerous repairs to [his] home, [and] other legal proceedings," Dkt. No. 53 at 1, and that he "do[es] not receive USPS mail at [his] home," Dkt. No. 67-1 at 2 ¶ 7. However, even if the Court were to assume that all of the aforementioned "circumstances [were] beyond [P]laintiff's control," George, 221 F. Supp. 3d at 432, Plaintiff never explains how any of these circumstances resulted in his failure to effectuate service or otherwise ask the Court for further extensions for nearly nine months.

9

Therefore, the Court finds that Plaintiff has failed to show good cause as to why he was unable to effectuate service on Defendants before December 16, 2022.

Accordingly, the Court need only inquire whether it wishes to afford Plaintiff another extension to properly serve Defendants *in the absence of good cause*. See Henderson, 517 U.S. at 658 n.5; Zapata, 502 F.3d at 196. Despite Plaintiff's failure to demonstrate good cause, the fact that the applicable statutes of limitations for Plaintiff's FLSA, NYLL, and breach of contract claims would likely bar the action once refiled does weigh in favor of yet another extension.[1] See DeLuca, 695 F. Supp. 2d at 66–67. Also weighing in favor of an extension is the fact that "Defendants have actual notice of the case pending against them," Mar. 2022 Order at 19, and thus would not be prejudiced in defending against the claims on the merits if Plaintiff eventually served them, see AIG, 197 F.R.D. at 11 (noting that actual notice of an action favors against a finding of prejudice since the "core function" of service is to supply notice "in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections").

But these factors alone do not require this Court to grant yet another extension to Plaintiff. See Knorr v. Coughlin, 159 F.R.D. 5, 7 (N.D.N.Y. 1994) (noting that the expiration of the statute of limitations does not require a court to use its discretion to grant an extension of time for service in every time-barred case). The Second Circuit has explicitly declined to adopt such a categorical rule. See Zapata, 502 F.3d at 198. That is because, "in the absence of good cause, no weighing of the prejudices between [a plaintiff and defendant] can ignore that the

---

[1] The complained-of conduct giving rise to these claims occurred from 2013 to 2016. Jan. 2021 Order at 2–4, 11–14. "The FLSA has a two-year statute of limitations that extends to three years for willful violations," id. at 11 (citing 29 U.S.C. § 255), and Plaintiff's state-law claims must be brought within six years after they accrue, see N.Y. Lab. Law § 663; N.Y. C.P.L.R. § 213(2).

situation is the result of the plaintiff's neglect." Id. That is likely why the Second Circuit has also permitted district courts "to inquire as to *pro se* plaintiffs' compliance (or lack thereof) with their instructions before dismissing their actions" pursuant to Rule 4(m). Meilleur, 682 F.3d at 63 n.6. This lack of compliance in the nine months after the Court issued the March 2023 Order favors dismissal.

In the March 2022 Order, the Court provided Plaintiff with a clear roadmap for how he might effectuate service in the event that the United States Marshals Service failed yet again to properly serve Defendants. See Mar. 2022 Order at 16–19. While the Court was inclined to provide this leniency given Plaintiff's pro se status, there comes a time when such leniency is no longer appropriate—for instance, when a pro se plaintiff no longer acts reasonably or diligently to effectuate proper service. See Nat'l Union Fire Ins. Co., 1994 WL 463009, at *4 ("For though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger."). To allow Plaintiff yet another extension of time to effectuate proper service here after he stopped litigating this action for nearly nine months would undermine Rule 4(m) and rob Defendants of its procedural protections, which would certainly prejudice Defendants.

Despite having filed new motions in the new year for the reimbursement of the costs of service and for a default judgment, process has not "been properly served" on Defendants, given Plaintiff's repeated delays and missed deadlines.[2] Meilleur, 682 F.3d at 63. Nor has Plaintiff

---

[2] The affidavits filed by Plaintiff on January 17, 2023, indicate that service by the Columbia County Sheriff's took place between December 20, 2022, and December 29, 2022—after the third and final deadline set by this Court. See Dkt. Nos. 59–63. Because Plaintiff did not establish good cause for missing (or otherwise comply with) the three deadlines that followed the

11

successfully petitioned this Court to direct substitute service on Defendants through alternative means.³ Accordingly, the Court grants Defendants' Cross-Motion to Dismiss the Second Amended Complaint pursuant to Rule 4(m) and denies the other pending motions in this case as moot.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Cross-Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 4(m) (Dkt. No. 64) is **GRANTED**; and it is further

**ORDERED**, that this action is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the remaining motions (Dkt. Nos. 57, 68, 75, and 76) are **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court shall enter a judgment of **dismissal without prejudice** and close this case; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

---

March 2022 Order, this service was not timely. The Court does not otherwise consider the adequacy of this service.

³ In Plaintiff's reply to Defendants' Cross-Motion to Dismiss, Plaintiff requests that the Court "deem proof of service based on the acknowledgement made by the Defendants in a sworn Petition to Modify Custody in the New York State Family Court in Columbia County." Dkt. No. 67 at 2 ¶ 7. Plaintiff should note that "courts have repeatedly held that 'actual notice of the action will not, in itself, cure an otherwise defective service.'" In re Teligent Servs., Inc., 324 B.R. 467, 474–75 (Bankr. S.D.N.Y. 2005), aff'd, 372 B.R. 594 (S.D.N.Y. 2007) (quoting Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Moreover, to the extent that the Court could construe this as a motion to direct substitute service of process on Defendants, that request is denied as the Court is unwilling to grant Plaintiff yet another extension to effectuate service.

DATED:      August 18, 2023
                 Albany, New York

LAWRENCE E. KAHN
United States District Judge